PRUDENTIAL–BACHE SECURITIES,
INC., Plaintiff,

v.

LISLE AXIS ASSOCIATES and
Manufacturers Hanover Trust
Company, Defendants.

No. 86 C 7634.

United States District Court,
N.D. Illinois, E.D.

March 18, 1987.

Jerold S. Solovy, Joan M. Hall, Laura A. Kaster, Michael J. Singer, Jenner & Block, Chicago, Ill., for plaintiff.

Claudia J. Lovelette, Angela S. Curran, Burke, Bosselman & Weaver, Chicago, Ill., for defendants.

1. Lisle Axis is a limited partnership formed to develop certain real estate in Lisle, Illinois.

2. All references are to the First Amended Complaint (the "Complaint"), which originally contained five counts. Counts IV and V were against American National Bank and Trust Company of Chicago ("American National") and involved a $350,000 letter of credit (the "Letter of Credit") initially issued by American National in Prudential's favor. After dishonoring that Letter of Credit October 1, 1986, American National, faced with this Court's ruling granting Prudential's motion for preliminary injunctive

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Prudential-Bache Securities, Inc. ("Prudential") has sued two defendants here:

1. Lisle Axis Associates ("Lisle Axis")[1] for alleged violations of Securities Exchange Act of 1934 ("1934 Act") § 10b (15 U.S.C. § 78j(b)) and Rule 10b–5, 17 C.F.R. § 240.10b–5 (Count I, the "Rule 10b–5 Claim"), common law conspiracy to defraud (Count II, the "Conspiracy Claim") and breach of contract (Count III);[2] and

2. Manufacturers Hanover Trust Company ("Manufacturers"), solely as Lisle Axis' claimed co-conspirator under the Conspiracy Claim.

Manufacturers now seeks dismissal under Fed.R.Civ.P. ("Rule") 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated in this memorandum opinion and order, Manufacturers' motion is denied.[3]

### Facts

On December 31, 1985 Lisle Axis and Prudential entered into a contract (the "Purchase Agreement"), under which Prudential purchased and agreed to remarket a $40 million municipal bond issue (the "Bonds") of the Village of Lisle, Illinois.[4] In return for its efforts, Prudential had the potential to receive a $550,000 commission from Lisle Axis: $200,000 was paid in cash at the closing under the Purchase Agreement, while the remaining $350,000 was made contingent on Lisle Axis' obtaining an acceptable credit facility for the Bonds

relief, issued a new letter of credit for $385,000 in favor of the Clerk of this District Court. Because that effectively mooted Counts IV and V, American National was dismissed out at Prudential's request.

3. Because much of Manufacturers' legal position emerged only in its Reply Memorandum, it was left to this Court's law clerk, Thomas Buchele, Esq., to uncover a good bit of the relevant authority referred to in this opinion.

4. American National and the Village of Lisle were also contracting parties.

by October 1, 1986. To secure the contingent portion, Lisle Axis gave Prudential a bank letter of credit in that amount (see n. 2), conditioned on Lisle Axis obtaining such a credit facility before October 1, 1986.

On August 18, 1986 Lisle Axis entered into an agreement (the "Credit Facility Agreement") with Manufacturers, under which the latter agreed to be both the credit facility and the remarketing agent for the Bonds. Lisle Axis did not, however, pay Prudential the $350,000 contingent part of its fee. Because in Prudential's view the Credit Facility Agreement satisfied the contingency on which that payment depended, Prudential now sues Lisle Axis and Manufacturers.

*Rule 10b–5 and Conspiracy Claims* [5]

 Count I claims Lisle Axis violated Rule 10b–5 by making untrue and misleading statements and omissions of material fact when it entered into the Purchase Agreement with Prudential. Complaint ¶ 12 alleges [6] Lisle Axis induced Prudential to enter into the Purchase Agreement by representing:

1. Lisle Axis (a) would not unreasonably withhold approval of a credit facility suggested by Prudential and (b) would cooperate in the selection of a credit facility for the bonds.

2. Prudential would receive the entire $550,000 commission due under the Purchase Agreement regardless of whether it was the source of the credit facility approved by Lisle Axis.

3. Lisle Axis would not substitute any other underwriter or remarketing agent for Prudential before October 1, 1986.

Complaint ¶ 14 asserts those representations were untrue or misleading or both because Lisle Axis:

1. did not intend to approve any credit facility proposed by Prudential and did not intend to cooperate in the selection of a credit facility;

2. intended to defraud Prudential of part of its commission under the Purchase Agreement by substituting a different remarketing agent before October 1, 1986; and

3. later agreed to pay Manufacturers the entire remaining commission of $350,000.

Count II claims Lisle Axis and Manufacturers conspired to defraud Prudential of the unpaid part of its commission under the Purchase Agreement. Specifically, Complaint ¶ 18 alleges Lisle Axis and Manufacturers agreed some time after December 31, 1985 that:

1. Prudential would be replaced as remarketing agent before October 1, 1986.

2. Manufacturers would receive the full $350,000 still due Prudential under the Purchase Agreement.

3. Prudential would be replaced as marketing agent without receiving the $350,000 due as part of its commission under the Purchase Agreement.

Complaint ¶ 19 identifies execution of the Credit Facility Agreement as one overt act performed in furtherance of the alleged conspiracy.

 Prudential premises this Court's jurisdiction over its claims on 1934 Act § 27 ("Section 27," 15 U.S.C. § 78aa) and principles of pendent jurisdiction. Manufacturers has no quarrel with this Court's jurisdiction over Prudential's Rule 10b–5 Claim against Lisle Axis—but Manufacturers is not a party to that claim. Manufacturers is sued only under the Conspiracy Claim, one grounded entirely in state law.[7] While principles of pendent *claim* jurisdiction clearly allow this Court, at its discretion, to embrace Prudential's related state law claims against Lisle Axis (*United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86

---

**5.** This opinion will not discuss Prudential's breach of contract claim against Lisle Axis—that state law claim is not relevant to jurisdiction over the Conspiracy Claim against Manufacturers.

**6.** See Appendix.

**7.** Jurisdiction over that claim cannot be based on diversity of citizenship, because both Prudential and Manufacturers have their principal places of business in New York.

S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)), Prudential's Conspiracy Claim against Manufacturers is more problematic: It must rest on pendent *party* jurisdiction (see *Aldinger v. Howard,* 427 U.S. 1, 15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976) [8]—an "embattled concept" (see *Bernstein v. Lind-Waldock & Co.,* 738 F.2d 179, 187 (7th Cir.1984)).

### Pendent Party Jurisdiction

■ Despite the doctrine's arguably shaky constitutional underpinnings (see *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1359–60 (7th Cir.1985) (Posner, J., dissenting and concurring in part)) and contrary authority in other circuits (see, e.g., *Carpenters Southern California Administrative Corp. v. D & L Camp Construction Co.,* 738 F.2d 999, 1000 (9th Cir.1984) [9]), our Court of Appeals has consistently approved the exercise of pendent party jurisdiction in federal-question cases when certain requirements are met (see, e.g., *Bernstein,* 738 F.2d at 187). *Zabkowicz v. West Bend Co.,* 789 F.2d 540, 546 (7th Cir.1986) (citations omitted) recently summarized those requirements:

In order to establish pendent party jurisdiction a two-prong test must be satisfied. First, the requirements of Article III of the Constitution for the exercise of federal judicial power must be fulfilled. Second, relevant statutory limitations on the exercise of pendent jurisdiction must be examined.... The constitutional prong of the test is satisfied when (1) there is a federal claim which is of sufficient substance to confer federal jurisdiction and (2) the federal and state claims are derived "from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding...." ... The second prong of the test requires "an examination of the posture in which

the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim, in order to determine whether 'Congress in [that statute] has ... expressly or by implication negated' the exercise of jurisdiction over the particular nonfederal claim."

As with pendent claim jurisdiction, even when the two-part test is satisfied a district court may still at its discretion decline to exercise pendent party jurisdiction if such exercise is not justified by "considerations of judicial economy, convenience and fairness to litigants" (*id.,* quoting *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139).

■ Prudential has an easy time with the first part of the constitutional prong of the *Zabkowicz*-framed test: Manufacturers cannot and does not dispute the substantiality of Prudential's federal claim against Lisle Axis. Instead Manufacturers concentrates its fire on the second part of the constitutional component, claiming the Conspiracy Claim against Manufacturers and Lisle Axis does not arise from the same common nucleus of operative fact as the Rule 10b–5 Claim against Lisle Axis. Although that argument has a kind of superficial plausibility, it rests on too narrow a view of the common-nucleus concept.

According to Manufacturers, the Conspiracy Claim and Rule 10b–5 Claim cannot arise from a common nucleus of operative fact because they stem from two separate transactions: the December 31, 1985 Purchase Agreement between Lisle Axis and Prudential and the August 18, 1986 Credit Facility Agreement between Lisle Axis and Manufacturers. But that separateness in time and documentation ignores the close relationship between the two transactions and, even more importantly, ignores Prudential's need to prove all aspects of the second to sustain its claim based on the first.

Prudential's Rule 10b–5 Claim essentially asserts Lisle Axis induced Prudential to

---

**8.** *Aldinger,* 427 U.S. at 16–19, 96 S.Ct. at 2421–2423, decided pendent party jurisdiction cannot be used to extend a federal court's jurisdiction to state law claims against a county when jurisdiction over the federal claim against a different party is based solely on 28 U.S.C. § 1343 ("Section 1343"). *Aldinger* did not decide whether

pendent party jurisdiction can exist when jurisdiction over the federal claim is premised on a statute other than Section 1343.

**9.** *Carpenters* reconfirmed the Ninth Circuit's line of cases rejecting pendent party jurisdiction.

enter into the Purchase Agreement by making promises to perform future acts while secretly intending not to perform those acts. Then the Conspiracy Claim charges Lisle Axis carried out its secret intent by conspiring with Manufacturers to deprive Prudential of its rights under the Purchase Agreement.

Those two claims are much more than merely sequentially related. Lisle Axis' intention is an essential element of the Rule 10b–5 Claim—and as with every fraudulent-intent claim where the alleged culprit has not actually confessed, proof of such intent is necessarily circumstantial. Although any violation of Rule 10b–5 by Lisle Axis actually occurred December 31, 1985 when the sale of securities to Prudential was completed, Prudential's proof of Lisle Axis' fraudulent intent on that date must depend on Lisle Axis' later acts evidencing that intent: in this case, the alleged conspiracy between Lisle Axis and Manufacturers.[10] Prudential must seek to persuade the trier of fact those later events inferentially demonstrate Lisle Axis' fraudulent intention existing at the outset of its dealings with Prudential.[11]

Benson v. Cady, 761 F.2d 335 (7th Cir. 1985) and Texwood Ltd. v. Gerber, 621 F.Supp. 585 (S.D.N.Y.1985), relied on by Manufacturers, do not require a different result. In Benson the plaintiff, an inmate in a Wisconsin prison, alleged (1) several violations of his Eighth Amendment rights and the Equal Protection Clause because of conditions at the prison and (2) several negligence claims under state law. Those claims were not based on a common nucleus of operative fact because they were "separable both factually and logically" and were "merely sequentially related." Benson, 761 F.2d at 343. In Texwood the

plaintiffs advanced both Rule 10b–5 claims and various state law claims for misrepresentation and bribery. Those state law claims were dismissed because they involved essentially unrelated acts that occurred long after the sale of securities that grounded the Rule 10b–5 claim. Texwood, 621 F.Supp. at 588.

"Operative fact," as the term itself demonstrates, is a proof-oriented concept. It rests on notions of interrelated claims that should ordinarily be tried in a single lawsuit for sound jurisprudential reasons. That idea fits the claims here, for they are not "merely sequentially related." They indeed arise from "a common nucleus of operative fact" within the meaning of Gibbs and its progeny.

■ Manufacturers also seeks to invoke the second prong identified in Zabkowicz: a claimed statutory limitation on pendent party jurisdiction. It says Section 27, which confers exclusively federal jurisdiction over Prudential's Rule 10b–5 claim, impliedly deprives federal courts of jurisdiction over related state law claims against pendent parties.[12]

To that end Manufacturers cites In re Investors Funding Corp. of New York Securities Litigation, 523 F.Supp. 550, 551 (S.D.N.Y.1980). There the court (id. at 561–62) held Section 27's exclusive focus on federal securities law claims, as exclusively reserved for federal courts, also implied a congressional intention to deny those courts jurisdiction over "securities-related claims where no federal securities laws claim exists between these parties." Investors Funding is a weak reed at best—and perhaps no reed at all.

Aldinger, 427 U.S. at 18, 96 S.Ct. at 2422, first articulated the statutory prong of the test for pendent party jurisdiction.

The district courts of the United States … shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder….

None of that language expressly limits or prohibits pendent party jurisdiction. Hence any such limitation would have to arise (if at all) by implication.

---

**10.** Proof that Lisle Axis did not in fact carry out its promises will be an essential part of Prudential's claim for relief under Rule 10b–5 (see Luce v. Edelstein, 802 F.2d 49, 56 (2d Cir.1986)).

**11.** Indeed, because damages are also an essential ingredient of the Rule 10b–5 Claim and Prudential did not sustain them until the August to October 1986 events occurred, proof of those events is integral to the first claim in still another way.

**12.** Section 27 reads in part:

But in the very course of doing so and of rejecting such jurisdiction in the Section 1343(3) context, the Court noted the argument *for* pendent party jurisdiction would be especially powerful if a federal court's jurisdiction over a federal claim were exclusive (as it is under Section 27). In such a situation only a federal court can hear both the federal claim and any closely related state law claims, so that considerations of judicial economy and convenience are particularly well served by allowing pendent party claims.

Indeed, writing for the three-Justice dissent in *Aldinger,* Justice Brennan expressed special concern as to the use of negative implication to find a congressional intent against pendent party jurisdiction (427 U.S. at 23, 96 S.Ct. at 2424):

> [A]ll instances of asserted pendent-party jurisdiction will by definition involve a party as to whom Congress has impliedly "addressed itself" by not expressly conferring subject-matter jurisdiction on the federal courts.

Both our Court of Appeals (*United States ex rel. Hoover v. Franzen,* 669 F.2d 433, 440–41 n. 15 (7th Cir.1982)) and the Second Circuit (*Weinberger v. Kendrick,* 698 F.2d 61, 76–77 (2d Cir.1982), an opinion obviously more authoritative than an opinion by one of the same Circuit's own district courts in *Investors Funding* ) have effectively embraced Justice Brennan's admonition in *Aldinger.* Both have rejected the negative implication approach.

In fact, *Weinberger* dealt with the same problem confronting this Court—whether Section 27 bars pendent party jurisdiction— and it reached a conclusion directly opposite that of *Investors Funding.* Instead of concentrating on the fact Section 27 expressly deals only with federal securities law claims, *Weinberger,* 698 F.2d at 76 emphasized the exclusivity of the Section 27 grant of federal court jurisdiction over such claims. From that exclusivity *Weinberger* reasoned Congress could not have intended to foreclose federal court jurisdiction over related nonfederal claims.[13]

■ Our Court of Appeals affords no such clear precedent in the Section 27 context. But it *has* rejected the negative implication approach in dealing with other statutory grants of jurisdiction and—like *Weinberger*—it requires positive proof of any congressional intent to bar pendent party jurisdiction (see *Franzen,* 669 F.2d at 441 n. 15). Other factors affecting such an analysis are whether the federal grant of jurisdiction is exclusive (*Zabkowicz,* 789 F.2d at 547–48) and whether nonfederal pendent claims are commonly brought under a particular statutory grant of jurisdiction (*Vantine v. Elkhart Brass Manufacturing Co.,* 762 F.2d 511, 519 (7th Cir. 1985)).

Each of the considerations that carry weight with our Court of Appeals plainly favors Prudential. Manufacturers has presented no evidence at all of a congressional intent to exclude pendent party jurisdiction over related nonfederal claims when federal-claim jurisdiction stems from Section 27. Pendent state law claims are commonly brought under Section 27 (see, e.g., *Treco, Inc. v. Land of Lincoln Savings and Loan,* 572 F.Supp. 1455, 1459 (N.D.Ill. 1983), *aff'd,* 749 F.2d 374 (7th Cir.1984)). Finally, because Section 27 is an exclusively federal grant of jurisdiction, only in a federal court could Prudential's Rule 10b-5 Claim and its closely related Conspiracy Claim against Manufacturers be tried together.

Accordingly both the constitutional and statutory prongs for pendent party jurisdiction identified in *Zabkowicz* have been met. It remains only to consider whether judicial discretion calls for the acceptance or rejection of such jurisdiction (*Zabkowicz,* 789 F.2d at 546).

■ On that score, the familiar considerations of judicial economy and convenience will obviously be served by allowing Prudential to try its Rule 10b-5 Claim and Conspiracy Claim in a single proceeding— and by definition Prudential's own convenience will be better served. Manufacturers has not sought to counter that—to con-

---

**13.** Manufacturers attempts to distinguish *Weinberger* on the basis it involved pendent plaintiffs rather than a pendent defendant. That factor might perhaps be relevant to the discretionary exercise of pendent party jurisdiction (discussed later in the text), but it bears not at all on the proper analysis of Section 27 (see 698 F.2d at 76–77).

tend that its having to defend against Prudential's Conspiracy Claim now, before this Court, instead of later before a state court would be unfair to it or greatly inconvenience it. It does, however, advance one final argument that may be dealt with in brief compass.

■ Prudential must prove its Conspiracy Claim by clear and convincing evidence (*ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.*, 90 Ill. App.3d 817, 830, 46 Ill.Dec. 186, 196, 413 N.E.2d 1299, 1309 (1st Dist.1980)), while a preponderance of the evidence is sufficient for Prudential to prevail on its Rule 10b–5 Claim (*Franklin Life Insurance Co. v. Commonwealth Edison Co.*, 451 F.Supp. 602, 607–08 (N.D.Ill.1978), *aff'd*, 598 F.2d 1109 (7th Cir.1979)). Because of those differing burdens of proof, Manufacturers urges there is a great likelihood of jury confusion that justifies declining jurisdiction over Manufacturers for the Conspiracy Claim. That very argument was rejected in *Duckworth v. Franzen*, 780 F.2d 645, 656 (7th Cir.1985), which held (in a case such as this, involving substantial factual overlap between the federal and pendent claims) different burdens of proof on the different claims are not a source of serious jury confusion.

### *Conclusion*

This Court's jurisdiction over Prudential's claim against Manufacturers is not barred either by Article III or by Section 27. Exercise of such pendent party jurisdiction will promote judicial economy and will neither inconvenience nor prejudice Manufacturers. Manufacturers' motion to dismiss Prudential's Conspiracy Claim against it for lack of jurisdiction is therefore denied.[14] It is ordered to answer Count II on or before March 30, 1987.

### APPENDIX

Prudential mistakenly cites *Miree v. De-Kalb County, Georgia*, 433 U.S. 25, 27 n.

2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977) for the notion this Court must accept all the Complaint's factual allegations as true for purposes of deciding Manufacturers' motion to dismiss. But *Miree* involved a Rule 12(b)(6) motion, not one under Rule 12(b)(1).[1]

To support its rule 12(b)(1) motion, Manufacturers could have challenged the Complaint's factual allegations by offering affidavits or other evidence. Because Manufacturers has chosen not to do so, Prudential's uncontradicted factual allegations will be accepted as true and will be construed liberally—but no argumentative inferences favorable to Prudential will be drawn from those allegations. See 5 Wright & Miller, *Federal Practice and Procedure (Civil)* § 1350, at 551.

**14.** *Manufacturers'* initial memorandum advanced Rule 12(b)(6) arguments as well, but the remaining submissions shifted focus to the jurisdictional issue. It is really unnecessary to deal with the challenge to Count II's statement of a claim—it clearly does so.

**1.** Manufacturers did originally combine a Rule 12(b)(6) motion with its Rule 12(b)(1) challenge to this Court's jurisdiction, but this Court quickly denied the Rule 12(b)(6) motion.