**Brenda DOE, in her own proper person and as next best friend of Michelle Doe, Plaintiffs,**

v.

**Booker BOBBITT and Gary T. Morgan, individually and as employees of the Illinois Department of Children and Family Services; Unknown Employees of the Department of Children and Family Services; Leo Wiggins and Leonard Goodman, individually and as employees of the Cook County Office of the Guardian Ad Litem; and the County of Cook, Defendants.**

No. 85 C 7104.

United States District Court, N.D. Illinois, E.D.

July 29, 1987.

**692**

John P. DeRose, DeRose and Russo, Chicago, Ill., for plaintiffs.

Karen Diamond, Asst. State's Atty. of Cook County, Paula Giroux, Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Brenda Doe says she warned state officials at least twice against placing her 11-year old daughter Michelle in the custody of Michelle's aunt. She told them that members of the aunt's household frequently fought and abused drugs and alcohol, and that one member of the household was under investigation for sexually abusing a child. The officials ignored her pleas and gave the aunt temporary custody of Michelle, who became the victim of repeated sexual abuse while living with her aunt.

Brenda brings this action "in her own proper person and as next best friend of

Michelle" under 42 U.S.C. § 1983 and the common law of Illinois. Brenda and Michelle name five defendants: two are employees of the Illinois Department of Children and Family Services ("DCFS")—Booker Bobbitt and Gary Morgan; two are employees of the Cook County Office of the Guardian Ad Litem—Leo Wiggins and Leonard Goodman; and the fifth defendant is the County of Cook. The individual defendants are sued both individually and in their official capacities. All defendants have filed motions to dismiss.

## FACTS

The complaint alleges the following facts. Brenda had a history of alcohol abuse, which at some unspecified time prompted the Juvenile Court of Cook County to place Michelle under the guardianship and protective custody of defendant Gary Morgan, a DCFS employee. On December 16, 1983, Brenda told defendant Booker Bobbitt, a DCFS social worker assigned to Michelle's case, that Michelle would not be safe if the DCFS placed her in the home of Margaret Proctor, the child's aunt. Brenda told Bobbitt that residents of the Proctor home abused drugs and alcohol, and that "physical abuse frequently occurred among family members of the Proctor household."

Two days later Bobbitt went to see Michelle at the Proctor residence—the complaint does not say how long she had been staying there—and spoke briefly with Margaret Proctor, Michelle, and Michelle's six-year old brother. Without further investigation of Brenda's charges, Bobbitt "allowed Margaret Proctor to retain custody of Michelle pending the custody hearing three days later."

The custody hearing took place on December 21, 1983 for the purpose of determining Michelle's temporary placement. Brenda Doe testified "that drugs and alcohol were abused at the Proctor residence, that the family had repeated fights in the presence of the children, and that one of the male residents of the Proctor residence had been accused of having a sexual affair with a young boy, which incident was actually being handled by the Cook County Circuit Court, Juvenile Division." She said she "was willing to agree to the temporary custody of the Department of Children and Family Services as long as the children were placed in a proper foster home other than that of Margaret Proctor."

Bobbitt testified that while he had not conducted a detailed investigation of the Proctor household, it was not his job to do so, and he recommended Michelle's placement with Margaret Proctor. Defendant Leo Wiggins, an employee of the Cook County Office of the Guardian Ad Litem appointed to represent Michelle's interests, showed no more inclination than Bobbitt to follow up Brenda's allegations, and insisted that Michelle be placed with Margaret Proctor. At the conclusion of the custody hearing the court appointed Morgan as Michelle's temporary custodian and ordered "[d]efendants to further investigate the Proctor residence for possible placement there."

After the hearing, and without any further investigation, Michelle "was left in the custody of Margaret Proctor." She subsequently became the victim of repeated sexual abuse by members of the Proctor household. Despite "continued and repeated complaints" by her mother to the DCFS, the DCFS failed to report or investigate the abuse until, after an unspecified period of time, Michelle was placed in a foster home.

Count I of the Does' complaint alleges a cause of action under § 1983 against all five defendants. Plaintiffs contend that Bobbitt, Morgan, and Wiggins "failed to take necessary ministerial action specifically required by statute and Court Order so as to prevent abuses of [Michelle's] rights under Illinois law and the Fifth and Fourteenth Amendments to the United States Constitution." Specifically, the Does accuse Bobbitt, Wiggins, and Morgan of failing to investigate the Proctors' suitability as a foster family, failing to investigate Brenda Doe's allegations about the Proctor residence, failing to have Michelle examined by a physician to determine whether she was being abused, and failing to speak

with Michelle away from the coercive atmosphere of the Proctor household. The Does additionally allege that Morgan, as Michelle's court-appointed custodian, abused his discretion by placing the child in the Proctor residence.

Plaintiffs contend that defendant Leonard Goodman is liable under § 1983 because he failed to prevent violations of Michelle's Fifth and Fourteenth Amendment rights insofar as he failed to supervise Michelle's representation by Wiggins and failed to develop a system for adequately training, informing, and monitoring assistant guardians ad litem.

Finally, the Does name Cook County as a defendant in Count I on the ground that it maintains the Cook County Office of the Guardian Ad Litem, which has repeatedly furnished guardians poorly prepared to represent the interests of minor children such as Michelle.

The concluding paragraphs of Count I allege that each defendant acted with gross negligence and deliberate indifference to the Does' interests, and that as a result the Does "suffered deprivations of their rights under the Fifth, Ninth and Fourteenth Amendments to the United States Constitution in that they were denied due process and equal protection under the law for persons similarly situated." The Does also claim an invasion of their "right to family privacy without state interference." They seek damages of at least $1,000,000, and treatment and rehabilitation for Michelle.

Counts II, III, and IV allege claims under Illinois law. Count II alleges that the gross negligence of all defendants resulted in battery to Michelle. Count III alleges that the intentional and negligent conduct of all defendants inflicted emotional distress on Brenda and Michelle. Count IV alleges that the negligence of Wiggins and Bobbitt resulted in Michelle's sexual abuse.

## DISCUSSION [1]

### I. COUNT I

Defendants focus their challenges on Count I, which provides the sole basis for federal jurisdiction. The court considers the sufficiency of the complaint with respect to each defendant in turn.

#### A. *Cook County*

■ The complaint fails to state a claim against Cook County. Plaintiffs allege that the county "maintained, operated and managed the Cook County Office of the Guardian Ad Litem," that it "has promulgated and/or operated pursuant to certain policies and customs whereby minors are represented by guardians who have insufficient information to adequately protect the minors' interests," and that "as its custom and practice the Defendant, Cook County, failed to properly supervise, train and instruct the individually named Defendants."

■ These boilerplate allegations are not enough. "To establish a municipal policy or custom [sufficient for municipal liability under § 1983], the plaintiff must allege a specific pattern or series of incidents that support the general allegation of a custom or policy; alleging one specific incident in which the plaintiff suffered a deprivation will not suffice." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986). Here plaintiffs fail to supply sufficiently detailed factual allegations supporting their claim that Cook County maintained an unlawful policy or practice, so Count I must be dismissed against the county.

#### B. *Guardian Ad Litem Defendants*

##### 1. *Wiggins*

Count I accuses Wiggins, Michelle's court-appointed guardian ad litem, of failing to object to Michelle's placement with Margaret Proctor. Wiggins claims abso-

**1.** Attorneys for all parties have submitted evidentiary materials relating to the merits of plaintiffs' claims. It is discouraging to have to remind duly licensed attorneys that motions to dismiss turn solely on the sufficiency of the pleadings. Because no party treats the pending motions as motions for summary judgment, *see* Fed.R.Civ.P. 56; N.D.Ill. General Rule 12(e)–(f), the court must ignore counsels' evidentiary submissions. Fed.R.Civ.P. 12(b).

lute immunity for his actions as a guardian ad litem.

The Illinois courts and the Seventh Circuit have yet to decide whether court-appointed guardians ad litem enjoy absolute immunity from suits arising out of their official duties. Although one circuit has answered this question in the affirmative, *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.1984), it is unnecessary to address the issue here because plaintiffs' § 1983 claim against Wiggins fails on a narrower point.

■ A § 1983 plaintiff must allege that the defendant acted under color of state law. Because a guardian ad litem owes his undivided loyalty to the minor whose interests he represents, courts have reasoned that guardians ad litem, like public defenders, do not act under color of state law in fulfilling their official duties. *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir.1986); *Clay v. Friedman*, 541 F.Supp. 500, 103–04 (N.D.Ill.1982) (Shadur, J.). *See Polk County v. Dotson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender does not act under color of state law when serving as counsel to indigent defendant in state criminal proceeding). Count I therefore fails to state a claim against Wiggins because it does not allege facts suggesting that he violated plaintiffs' rights while acting under color of state law.

### 2. Goodman

■ Count I identifies defendant Goodman as "an employee of GAL in charge of supervision of guardians ad litem appointed in Cook County," and alleges that he failed to develop a system for training, supervising, and monitoring the performance of guardians ad litem. At most, this suggests Goodman was negligent in performing his duties. Mere negligence is not actionable under § 1983. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986). Count I therefore fails to state a claim against Goodman.

### C. DCFS Defendants

#### 1. Bobbitt

■ Count I makes only limited allegations of Bobbitt's involvement in the chain of events leading to Michelle's abuse. Specifically, plaintiffs assert that Bobbitt conducted a slipshod investigation of the Proctor household before the custody hearing, and that at the hearing he recommended Michelle's placement with Margaret Proctor. Nothing in the complaint, however, suggests that Michelle was abused before the custody hearing, or that Bobbitt had any responsibility for Michelle's well-being after the hearing. Since it was the decision to leave Michelle with the Proctors *after* the hearing that subjected her to abuse, the allegations of Count I do not establish a causal link between Bobbitt's derelictions and Michelle's injuries. "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary" to establish liability under § 1983, *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir.1986), and therefore Count I fails to state a claim against Bobbitt.

#### 2. Morgan

■ Count I identifies Morgan as the person to whom the court assigned custody of Michelle, and who was responsible for leaving her in the care of a family the DCFS had reason to believe contained drug abusers and a child molester.

Morgan moves to dismiss on the ground that he lacked personal involvement in the events leading to Michelle's injuries. The text of the complaint is to the contrary: it specifically alleges that Morgan was Michelle's court-appointed custodian both before and after the hearing, and that in leaving her with the Proctors he ignored serious warnings that the Proctor household was unsafe.

Morgan also urges the court to dismiss Count I against him because it alleges mere negligence. While it is true mere negligence is not actionable under § 1983, *see Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 664–66, 88 L.Ed.2d 662 (1986); *Davidson v. Dannon*, 474 U.S. 344, 106 S.Ct. 668, 670–71, 88 L.Ed.2d 677 (1986),

Count I alleges that Morgan acted with gross negligence and deliberate indifference. Plaintiffs' factual allegations support such a claim; it exceeds ordinary negligence for a state official to place an 11–year old girl in a household which the official has reason to believe contains a child abuser. This circuit has noted on several occasions that reckless or callous disregard for a plaintiff's constitutional rights is actionable under § 1983, *see Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir.1986); *Kirchoff v. Flynn*, 786 F.2d 320, 323–24 (7th Cir.1986); *Perry v. Larson*, 794 F.2d 279, 286 (7th Cir.1986), and plaintiffs' allegations against Morgan satisfy that standard.

Finally, Morgan argues that the due process claim in Count I lacks merit because plaintiffs participated in a full judicial hearing prior to Michelle's placement in the Proctor home. This misses the point of plaintiffs' claim. Plaintiffs agree that the hearing took place, but contend that at its conclusion the judge placed Michelle in Morgan's custody and ordered him to investigate the Proctor home for possible placement. It thus was not the court but Morgan who ultimately decided to place Michelle with the Proctors. Accordingly, plaintiffs assert that the hearing did not constitute due process with respect to Morgan's action.

Two appellate decisions support a conclusion that Count I states a claim against Morgan under § 1983 for a deprivation of Michelle's liberty without due process of law. In *Doe v. New York City Department of Social Services*, 649 F.2d 134 (2d Cir.1981), the Second Circuit reversed a jury verdict that the agency responsible for placing the minor plaintiff in a foster home and supervising her care was not liable for the plaintiff's injuries where evidence showed that the agency failed over a six-year period to act on its knowledge that plaintiff's foster parents were abusing her. The court noted that "[d]efendants may be held liable under § 1983 if they, or in the case of an agency, its top supervisory personnel, exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or ameliorate the risk or injury was a proximate cause of the plaintiff's deprivation of rights under the Constitution." *Id.* at 145. Because a series of errors by the district court prevented the jury from considering whether the agency's "omissions were the product of deliberate indifference and proximately caused any portion of [the plaintiff's] abuse," *id.* at 149, the Second Circuit remanded the case for a new trial.

After the parties in this case completed briefing on the pending motions, the Seventh Circuit decided *DeShaney v. Winnebago County Department of Social Services*, 812 F.2d 298 (7th Cir.1987). The principal plaintiff in *DeShaney* was a child in the custody of his father. Soon after the father moved to Wisconsin with his son, the Winnebago County Department of Social Services learned from hospital personnel that the father's girlfriend had brought the boy to the emergency room with suspicious bruises and abrasions. Over the following 14 months the Department caseworker assigned to monitor the boy's welfare learned of a series of other incidents of abuse, some severe enough to require hospitalization, but took no steps to protect the boy until a beating by his father destroyed portions of his brain and left him institutionalized for life.

The child alleged that the Department and the caseworker deprived him of liberty without due process of law. The Seventh Circuit affirmed the district court's dismissal of the child's § 1983 claim, holding that a state has no duty to intervene to protect a child from abuse by his parent. 812 F.2d at 302–04. In so doing, however, the court noted that the state's failure to rescue the child in *DeShaney* "must be distinguished from the case where the state places the victim in a situation of high risk, thus markedly increasing the probability of harm and by doing so becoming a cause of the harm." *Id.* at 303. Had the *DeShaney* boy "been a foundling in the custody of the state, which then placed him with foster parents who it knew or strongly suspected would abuse the child, this case would be like *Doe v. New York City Department of Social Services*, .... But he was not." *Id.*

In every important respect this case is indeed like *Doe v. New York City Department of Social Services.* Here, as in that case, plaintiffs allege that the state took a child away from its natural parent and placed it in the custody of a state agent. This agent was responsible for the child's well-being, but placed it in a home which the agent had cause to believe was unsafe, and ignored repeated reports of abuse. On the face of the complaint, Morgan's actions were a proximate cause of Michelle's injuries, and therefore Count I states a claim against Morgan under § 1983 for deprivation of Michelle's liberty without due process of law.[2]

## II. COUNTS II–IV

Having dismissed Count I against Cook County, Wiggins, Goodman, and Bobbitt, and having determined that Count I states a claim against Morgan for deprivation of Michelle's liberty without due process of law, the court turns next to plaintiffs' state law claims—more specifically, to defendants' requests that the court decline to exercise pendent jurisdiction over those claims.

Defendants' briefs treat the issue of pendent jurisdiction with short, conclusory statements. Plaintiffs ignore it entirely. Unfortunately, there are several reasons the problem is not a simple one.

An initial question is whether plaintiffs' state law claims are claims "that state officials violated state law in carrying out their official responsibilities," *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 919, 79 L.Ed.2d 67 (1984). If so, pendent jurisdiction is unavailable. *Id.* at 117–21, 104 S.Ct. at 917–19.

Second, because the court concludes that plaintiffs state a federal claim against only one of the five defendants named in Counts II–IV, it is necessary to determine whether the exercise of pendent party jurisdiction is

appropriate with respect to the other four defendants. The rules governing pendent party jurisdiction are a dismaying morass, *see, e.g., Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976); *Babcowicz v. West Bank Co.,* 789 F.2d 540, 545–58 (7th Cir.1986); *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1353–54 (7th Cir.1985); *id.* at 1359–61 (Posner, J., concurring and dissenting); *Prudential-Bache Securities, Inc. v. Lisle Axis Assoc.,* 657 F.Supp. 190, 194–96 (N.D. Ill.1987), and their effect on this case is far from clear.

Third, there is the possibility of an added twist to the pendent party problem. Count I appears to allege violations of the constitutional rights of both Brenda and Michelle; it repeatedly refers to violations of "plaintiffs'" constitutional rights, and seeks an award of damages to "Plaintiffs." In briefing the motions to dismiss, however, the parties treat Count I as if it alleges a claim solely on behalf of Michelle. Consequently, in denying Morgan's motion to dismiss, the court holds only that Count I states a claim under § 1983 for infringement of Michelle's due process rights. The court has not held that Brenda has a valid § 1983 claim of her own against Morgan. Should Morgan successfully move to dismiss Brenda's § 1983 claim against him— hardly a remote possibility—the court would then have to decide whether to exercise pendent jurisdiction over Brenda's state law claims against Morgan and the other defendants.

The court declines to plunge into this swamp alone. Counsel must blaze the way. If defendants want the court to dismiss plaintiffs' state law claims, they should file a renewed motion to dismiss and brief the issue adequately. In the interim, defendants' motions to dismiss are denied with respect to Counts II–IV.

---

2. Morgan, for reasons not clear to the court, has not specifically challenged plaintiffs' assertion that Count I also states a claim for violation of their Fifth and Ninth Amendment rights, their right to equal protection under the Fourteenth Amendment, and their "right to family privacy."

Because the court finds that Count I properly alleges a violation of the Fourteenth Amendment's due process clause, it is unnecessary to explore the validity of plaintiffs' alternative theories of relief. Presumably Morgan will move to dismiss these claims at a later date.

## CONCLUSION

Count I is dismissed against defendants Cook County, Wiggins, Goodman, and Bobbitt, but not against defendant Morgan. Defendants' motions to dismiss are denied with respect to Counts II–IV.