Brenda **DOE, in her own proper person and as next best friend of Michelle Doe, Plaintiff,**

v.

**Booker BOBBITT, Shirley A. Dukes, Devorah Roberts, and Barbara Ullman, Individually and as employees of the Illinois Department of Children and Family Services, Defendants.**

No. 85 C 7104.

United States District Court, N.D. Illinois, E.D.

Nov. 4, 1988.

---

John P. DeRose, Chicago, Ill., for plaintiff.

Paula Giroux, Illinois Atty. Generals' Office, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This is the second round of motions to dismiss this case involving the alleged wrongful acts of certain employees of the Illinois Department of Children and Family Services ("DCFS"). Brenda and Michelle Doe assert that as a result of these acts, Michelle Doe suffered physical and sexual abuse at the hands of her relatives. The DCFS employees have moved to dismiss the Does' Second Amended Complaint on a variety of grounds; their thrust is that the Does have not stated claims upon which this court can grant relief.

The facts of this case are essentially the same as those outlined in this court's earlier opinion. See *Doe v. Bobbitt*, 665 F.Supp. 691 (N.D.Ill.1987). The Does' Second Amended Complaint differs from their original complaint in many ways, principally in the addition of DCFS employees Devorah Roberts, Barbara Ullman, and Shirley Dukes.[1] The Does have also pared their claims to three: Count 1, a claim under 42 U.S.C. § 1983 (1982) to redress violations of the Does' constitutional rights; Count 2, a claim under Illinois law for battery; and Count 3, a claim under Illinois law for intentional infliction of emotional distress.

Roberts, Ullman, and Dukes assert that the statute of limitations bars all three of these claims. Section 1983 does not contain a limitation on actions, but the Supreme Court in *Wilson v. Garcia*, 471 U.S. 261, 275–79, 105 S.Ct. 1938, 1946–48, 85 L.Ed.2d 254 (1985), determined that the federal district courts should borrow the limitations period for personal injury actions set by the state in which the court sits. Since *Wilson* created problems regarding its retroactive application, the Seventh Circuit construed *Wilson* in cases where a federal court must borrow Illinois law as barring all § 1983 claims filed within the shorter period of either five years of the accrual of the cause of action or two years after *Wilson* was decided, if the cause of action accrued prior to *Wilson*. See *Anton v. Lehpamer*, 787 F.2d 1141, 1146 (7th Cir.1986). Roberts, Ullman, and Dukes assert that Michelle's injuries occurred in February 1984, prior to *Wilson*. They contend that *Anton* thus dictates that the Does had to file their Second Amended Complaint prior to April 17, 1987—two years after the decision in *Wilson*. The Does filed their Second Amended Complaint on September 6, 1988.

 This argument contains a few flaws. First, under Ill.Rev.Stat. ch. 110, ¶ 13–211 (1983), Illinois' two-year limitation for personal injury claims contained in *id.*, ¶ 13–202, does not apply to Michelle, since she is presently 15 years of age. Paragraph 13–202 bars some of Brenda's claims, however. Brenda argues that this court should relate her claims against Roberts, Ullman, and Dukes back in time to her original complaint, under the provisions of

---

1. The Does voluntarily dismissed their claims against Leonard Goodman and Cook County on October 25, 1988, and against Gary Morgan on October 31, 1988.

Rule 15(c), Fed.R.Civ.P. She contends that her claims against Roberts, Ullman, and Dukes arose out of the same transaction described in her original complaint, and that her naming of "Unknown Employees of the Department of Children and Family Services" in that complaint, see *Doe*, 665 F.Supp. at 691, notified Roberts, Ullman, and Dukes of her claims against them. The Seventh Circuit has held, however, that such pleading does not constitute proper notice under Rule 15(c), and that, moreover, Rule 15(c) is available only to those who demonstrate their failure to include a party stemmed from a mistake in identity. See *Wood v. Worachek*, 618 F.2d 1225, 1229–30 (7th Cir.1980).

Brenda makes one additional argument, however, that will enable her to save one of her claims from the statute of limitations. Brenda and Michelle filed their original complaint in this matter on August 14, 1985. They filed their first amended complaint on January 22, 1986. The two DCFS employees named in the suit at that time, Gary Morgan and Booker Bobbitt, moved to dismiss this complaint on March 4, 1986, and obtained a stay of discovery pending this court's ruling on their motion. Morgan and Bobbitt were represented by Assistant Illinois Attorney General Paula Giroux.

This court ruled on some of the issues presented in the motions to dismiss on July 30, 1987. See *Doe*, 665 F.Supp. at 691. The Does moved to commence discovery in October 1987, but at the urging of the defendants this court denied the Does' motion on November 5, 1987, pending the court's ruling on matters left unresolved in its July decision. This court completed its consideration of the motions to dismiss on March 23, 1988. See *Doe v. Bobbitt*, 682 F.Supp. 388 (N.D.Ill.1988). The Does then began discovery, which they claim led to the addition of Roberts, Ullman, and Dukes in their Second Amended Complaint.

■ Brenda Doe submits that because Morgan and Bobbitt obtained a stay that prevented discovery of facts that implicated Roberts, Ullman, and Dukes—their colleagues at DCFS—this court should tack the period the stay was in effect to the limitations period. Such a move would extend the filing deadline of April 17, 1987 by nearly two years, and thus preserve Brenda's § 1983 claims against Roberts, Ullman, and Dukes from the statute of limitations. This argument suffers, however, from a few factual defects. According to the Second Amended Complaint, Roberts and Ullman violated Brenda's constitutional rights by failing to heed Brenda or Michelle's warnings. See Second Amended Complaint, ¶¶ 19, 23, 44(e)–(f). Brenda did not need to engage in discovery to sue Roberts or Ullman within the limitations period, since she knew she had spoken to them. Even if Brenda did not know to whom she spoke, she could have alleged enough facts (telephone numbers, dates, and the like) to have notified Roberts and Ullman that she would name them in this suit eventually.

■ Not so for Dukes. Brenda's charges against Dukes stem from Dukes's role as Bobbitt's supervisor. See *id.* at ¶¶ 37(b), 37(f), 37(h), 40. Brenda would not have known the identity of Bobbitt's supervisor or her role in this matter without discovery, and thus this court must respond to Brenda's request to extend the limitations period by the length of the period of the stay of discovery. Under Illinois law, a statute of limitations runs unless another statute provides for tolling. See *Ill. Bell Telephone Co. v. Allphin*, 60 Ill.2d 350, 356, 326 N.E.2d 737, 741 (1975). The only Illinois common-law exception to this is the discovery rule, which will not aid Brenda in this case. See *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 414–17, 58 Ill.Dec. 725, 728–29, 430 N.E.2d 976, 979–80 (1981) (discovery rule postpones the starting of the period of limitations "until the injured party knows or should have known of his injury"); *Hames v. Northern Illinois Gas Co.*, 70 Ill.App.3d 628, 629, 27 Ill.Dec. 164, 165, 388 N.E.2d 1127, 1128 (1979) (discovery rule does not extend to situations "where the undetermined fact is not the existence of the injury, but rather the identity of the tortfeas[o]r").

If Brenda wishes to preserve her claims against Dukes from the statute of limitations, she must do so with the help of another statute. One such statute is Ill. Rev.Stat. ch. 110, ¶ 13–216, which provides: "When the commencement of an action is stayed by injunction, order of a court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." This statute will save Brenda's claims against Dukes from the Illinois statute of limitations. Admittedly, this court's stay of discovery in and of itself did not prevent Brenda from filing any claim against Dukes. When coupled with Rule 11, Fed.R.Civ.P., however, the stay worked to prohibit such a filing. Rule 11 requires the signer of every pleading to certify "that to the best of the signer's knowledge, information, and belief found after reasonable inquiry it is well grounded in fact...." Had Brenda filed a complaint against Dukes on a mere hunch, Dukes (through her attorney Giroux, who is the same attorney who helped the other DCFS defendants obtain the stay of discovery in this case) could have moved for sanctions under Rule 11. Caught between a statute of limitations and Rule 11, Brenda properly waited until this court lifted the stay of discovery, discovered facts implicating Dukes, then amended her complaint.

This court thus holds that while the statute of limitations bars Brenda's claims against Roberts and Ullman, it does not bar her claims against Dukes. Dukes thus joins Bobbitt in asserting that Brenda has stated no claims under the Due Process Clause of the Fourteenth Amendment and the Ninth Amendment to the Constitution. Brenda does not dispute the defendants' observation about her Ninth Amendment claim, but she insists that the defendants denied her due process by ignoring her warnings that Michelle's placement home was dangerous. Under the Due Process Clause, however, Brenda's interest in Michelle's placement gave her a right only to "fundamentally fair procedures." See *Santosky v. Kramer,* 455 U.S. 745, 753–54, 102 S.Ct. 1388, 1394–95, 71 L.Ed.2d 599 (1982). According to *Santosky,* a state's chosen procedures are "fundamentally fair" when they achieve a proper balance among the private interests affected by the proceeding, the risks of error from a state's chosen procedure, and the countervailing governmental interests supporting use of the procedure.

■ The problem with assessing Brenda's due process claim is that she never indicates which of DCFS's procedures were not fundamentally fair. In one sense, Brenda's allegations regarding Bobbitt and Dukes's insensitivity to her pleas amount to claims that she did not receive the benefit of fundamentally fair procedures—that in spite of what Brenda was supposed to get in the way of procedures, these defendants deprived her of them. This court interprets *Santosky,* however, as requiring parents to cast their claims of a denial of due process in the state's taking of their children in terms of defective procedures. This court cannot sit as a court of errors for DCFS, correcting every flaw in that agency's poor placements. The court can correct, however, fundamental defects in DCFS's procedures. This court of course cannot do this until Brenda indicates which procedures need improvement. For this reason, this court must reject Brenda's due process claims as she currently states them.

■ The defendants next challenge all of the Does' claims that they denied the Does equal protection of the laws, in violation of the Fourteenth Amendment. As the Seventh Circuit noted in *Shango v. Jurich,* 681 F.2d 1091 (7th Cir.1982), "the guarantee of equal protection of the laws is not a source of substantive rights, 'but rather a right to be free from invidious discrimination in statutory classification and other governmental activity.'" *Id.* at 1103, quoting *Harris v. McCrae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). The defendants have asked the Does to specify what invidious discrimination occurred in this case, but the Does refuse to present anything beyond what they have alleged in their complaint. This court cannot find anything in the Second Amended Complaint that it easily describes as dis-

crimination, and so it will dismiss the Does' equal protection claims.

■ All of this leaves the court with Michelle's § 1983 and battery claims, as well as the Does' claims for intentional infliction of emotional distress. The defendants assert that they have qualified immunity from damage liability stemming from the first of these claims, Michelle's § 1983 action. See *Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982) (government officials who perform discretionary functions generally shielded from civil damages liability as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"). They say that they have such immunity since Michelle did not have a clearly established constitutional right to be free of the abuse she is alleged to have suffered. Michelle cites *Brooks v. Richardson,* 478 F.Supp. 793 (S.D.N.Y. 1979)—a case that the defendants do not question [2]—for the proposition that she had such a right. The defendants suggest, however, that *Donald v. Polk County,* 836 F.2d 376 (7th Cir.1988), and *DeShaney v. Winnebago County Department of Social Services,* 812 F.2d 298 (7th Cir.1987), cert. granted, —— U.S. ——, 108 S.Ct. 1218, 99 L.Ed.2d 419 (1988), are directly contrary to *Brooks,* such that not only was there doubt as to whether Michelle had such a right, she plainly has no right at all.

Neither of the cases which defendants cite controls this case or overrules *Brooks.* In *Donald,* the Donald family sued several state and county welfare and law enforcement agencies for having removed Dana Donald from the Donald home, and improperly investigating charges that Dana had been physically abused. The Donalds contended that these actions violated the state's obligation to provide social services to them, according to a state statute. The Seventh Circuit upheld the decision of the district court, however, that the violation alleged by the Donalds did not amount to a federal constitutional violation. While the Does have alleged, as did the Donalds, that the defendants violated state law, the Does have done more than this: they contend that the defendants directly deprived Michelle of her liberty without due process of law, as described in *Brooks.* The theory of *Brooks* was not that a state violates the Fourteenth Amendment by disobeying its own statutes, but rather that those "in the custody of the state and placed in foster care [have] a constitutional right to at least humane custodial care." *Brooks,* 478 F.Supp. at 795.

*DeShaney* is closer to this case, in that it involved an action by the guardian ad litem and the mother of Joshua DeShaney against Winnebago County, its Department of Social Services ("DSS"), and two DSS employees on the theory that they had directly violated Joshua's Fourteenth Amendment rights. Joshua's representatives contended that DSS was aware that Joshua's father, who had custody of Joshua, had abused him. DSS had taken temporary custody of Joshua and had investigated the charges, but had decided there was insufficient evidence of child abuse to retain cus-

---

**2.** They do make one remark, calling *Brooks* a case "of considerable vintage." Considering that *Brooks* is a 1979 case, the court can only wonder how the defendants feel about *Marbury v. Madison,* 5 U.S. (1 cranch.) 137, 2 L.Ed. 60 (1803); *M'Culloch v. State of Maryland,* 17 U.S. (4 wheat.) 316, 4 L.Ed. 579 (1819), *Gibbons v. Ogden,* 22 U.S. (9 wheat.) 1, 6 L.Ed. 23 (1824); *Slaughter–House Cases,* 83 U.S. (16 wall.) 36, 21 L.Ed. 394 (1873); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *U.S. v. Carolene Products Co.,* 304 U.S. 144, 58 S.Ct. 778, 82 L.Ed. 1234 (1938); *Youngstown Co. v. Sawyer,* 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952); *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954); *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081

(1961); and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to name a few cases.

The defendants' argument regarding *Brooks'* age is specious. The Does make a good faith effort to demonstrate that Michelle had a clearly established right to have the state protect her from the abuse that she allegedly suffered. If they had cited a 1984 case relating to abuse of children in the custody of the state, the defendants surely would have argued that the case was too recent to have made such a right "clearly established." Here they argue that a 1979 case was too old. This court will not allow the defendants to prevail this controversy by means of a Catch–22.

tody. DSS thus returned Joshua to his father. A DSS caseworker regularly visited the DeShaney household thereafter, but did not investigate matters with enough vigor to discover that the abuse of Joshua was continuing. Eventually, Joshua's father beat Joshua so severely that he critically injured Joshua's brain. Wisconsin subsequently convicted Joshua's father of child abuse and sent him to prison.

Joshua's representatives charged that Winnebago County's conduct violated Joshua's Fourteenth Amendment rights in two ways. They contended first that DSS deprived Joshua of the right to be protected from his father's abuse. The Seventh Circuit rejected this theory, citing the "well established" circuit rule that a state's "failure to protect people from private violence, or other mishaps not attributable to the conduct of its employees, is not a deprivation of constitutionally protected property or liberty." *DeShaney*, 812 F.2d at 301.

The second theory proposed by Joshua's representatives was that DSS shared responsibility with Joshua's father for depriving Joshua of his right to bodily integrity. The Seventh Circuit dismissed this theory too, on grounds of insufficient causation. The lack of causation, the court held, "can be seen most clearly by asking whether, if [DSS] had never existed, Joshua would have sustained the injuries for which he is seeking damages in this suit. The answer, almost certainly, is 'yes.'" The court analogized DSS's actions to a "botched rescue attempt," but refused to extend the common law's rules regarding rescuer liability to cover constitutional torts. In doing so, the court rejected the holding of *Estate of Bailey by Dare v. County of York*, 768 F.2d 503, 510–11 (3d Cir.1985), which decided that a special relationship—one with accompanying constitutional duties—exists between the state and a child once the state is aware of a danger that a particular child may be abused. *DeShaney*, 812 F.2d at 302–03.

This court does not need to follow *Estate of Bailey* or disregard *DeShaney* in order to find the defendants liable in this case. This is clear by the answer to the question put forth by the Seventh Circuit in *DeShaney*: if DCFS had never existed, Michelle almost certainly would never have sustained the abuse that she suffered. It took the intervention of DCFS to remove Michelle from her mother and place her with her abusive relatives. This action, and not the mere notice to DCFS that Michelle was in danger of abuse from her relatives, created the special relationship between DCFS and Michelle that will make the defendants liable to Michelle if she can establish the facts she alleges in the Second Amended Complaint. As the Seventh Circuit commented in *Archie v. City of Racine*, 847 F.2d 1211, 1222–23 (7th Cir.1988), "if the government hurls a person into a snake pit it may not disclaim responsibility for his safety."

This court thus holds that, not only can Michelle sue the defendants under § 1983 for her injuries, the right that she claims was clearly established in 1984. See *Brooks*, 478 F.Supp. at 795 and cases cited therein. The defendants thus have no qualified immunity from any civil damages liability that may result from Michelle's § 1983 claims. They do have absolute immunity, however, from damages stemming from the acts alleged in Counts 2–3. Illinois grants public officials immunity from damages liability for acts falling within their official discretion. See *Mora v. State*, 68 Ill.2d 223, 12 Ill.Dec. 161, 369 N.E.2d 868 (1977). In *Midamerica Trust Co. v. Moffat*, 158 Ill.App.3d 372, 375, 110 Ill.Dec. 787, 791, 511 N.E.2d 964, 968 (1987), the court held that DCFS officials act within their official discretion in making decisions relating to the placement of minors within DCFS custody. The Does claim that the defendants' acts were ministerial, but they make no attempt to distinguish the contrary holding of *Moffat*. This court thus dismisses Counts 2–3 in their entirety.[3]

---

3. Even if the defendants had no immunity, this court would find it difficult to hold the defendants liable under Counts 2–3. Count 2 claims that the defendants are responsible for aiding and abetting the battering of Michelle, but the Does have not pleaded a necessary element of liability for those who aid and abet: incitement or acts in furtherance of a common plan with

In summary, this court dismisses Brenda Doe's claims against Devorah Roberts and Barbara Ullman, as they are barred by the Illinois statute of limitations. The court also dismisses Brenda's claims against Booker Bobbitt and Shirley Dukes for various other failures to state a claim upon which relief can be granted. The court dismisses Michelle Doe's claims in Counts 2–3 against all of the defendants on grounds that each is absolutely immune from liability, and dismisses her count for denial of equal protection on grounds that it does not state a claim upon which relief can be granted. All other motions to dismiss are denied.

the assailant. See *Sklan v. Smolla,* 95 Ill.App.3d 658, 51 Ill.Dec. 161, 420 N.E.2d 575 (1981). The Does contend that this court can hold the defendants liable for the actions of Michelle's relatives in Counts 2–3 because the relatives were agents of DCFS. A principal is liable under Illinois law for the acts of his or her agent, however, only if the agent commits the act under the authority or direction of the principal. See *Carlberg v. Spiegels House Furnishing Co.,* 178 Ill.App. 424 (1913). When the agent abandons the business of the agency and performs an act outside of the scope of his authority in a wanton, willful, or malicious manner, the principal is not liable for the agent's act. See *Johnson v. Barber,* 10 Ill. 425 (1849).