MIDAMERICA TRUST COMPANY, Guardian of the Estates of Kevin Jones *et al.*, Plaintiff-Appellant, v. DEBORAH MOFFATT, Defendant-Appellee.

Fifth District   No. 5—86—0054

Opinion filed July 31, 1987.

*Justice Lewis replaces Justice Jones, who retired after the cause was taken under advisement.

Judy L. Cates and Kirby Palmer, both of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Midamerica Trust Company, guardian of the estates of Kevin Jones, Jeremy Jones and Jessie Jones, appeals from the trial court's refusal to vacate its dismissal of the plaintiff's complaint.

In its three-count complaint, plaintiff states that it had been appointed guardian of the estates of Kevin Jones, Jeremy Jones, and Jessie Jones, three minor children of Virginia Williams. Deborah Moffatt, the defendant, is alleged to have been employed by the Department of Children and Family Services (DCFS) as a social worker and is described in the complaint as the agent of DCFS. According to counts I and II, on December 2, 1982, DCFS was granted guardianship of Kevin and Jeremy, without the power to consent to their adoption, as a result of the agency's allegations that their natural mother had neglected them. These children were placed in foster care from approximately October 1982 until December 16, 1983, when they were returned by DCFS to the physical custody of their natural mother.

The plaintiff alleges that defendant, in returning the children to their natural mother, knew that their various needs had to be monitored and that "in reckless disregard of her duty to protect [them] from neglect" committed one or more acts characterized as "wilful and wanton misconduct." Specifically, plaintiff contends that defendant knew of certain detrimental conditions and failed to take remedial action "in conscious disregard" of the health, safety and welfare of the children and of her duty to them. Plaintiff alleges that the children had consequently suffered injuries or illnesses and sought damages in an amount in excess of $15,000 for each child.

In count III, brought on behalf of Jessie Jones, plaintiff alleges that defendant was assigned by DCFS to monitor the home of Jessie's mother, that defendant knew of the mother's neglect of Jessie's siblings, and that defendant, "in her capacity as a social worker for DCFS" visited the mother's home "to check on the welfare" of Jessie. According to this count, defendant, "in her capacity as a social

worker for DCFS," had a duty to protect Jessie from a neglectful environment and to report such an environment to Child Protective Services; that "in reckless disregard of her duty to protect the minor from neglect" defendant committed one or more acts characterized as wilful and wanton misconduct; and that Jessie consequently suffered pneumonia on two occasions. Plaintiff prayed for judgment on behalf of Jessie in an amount in excess of $15,000.

The defendant filed a motion to dismiss plaintiff's complaint on the grounds of sovereign immunity, public official immunity, judicial immunity, and failure to state a cause of action against the named defendant. By an order dated August 7, 1985, the circuit court allowed defendant's motion to dismiss.

On September 3, 1985, plaintiff filed a motion to reconsider and vacate the order of dismissal. That motion was denied on January 15, 1986. In its notice of appeal, plaintiff sought review of the January 15, 1986, order.

■■ ■ In Illinois, it is well settled that, pursuant to the doctrine of public official immunity, State officials and employees are fully protected from liability for acts falling within their official discretion. (*Mora v. State* (1977), 68 Ill. 2d 223, 369 N.E. 2d 868; *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 448 N.E. 2d 249.) The doctrine of public official immunity is "based upon the policy that public officials should be free to exercise their judgment according to their best perception of public needs." (*Hanzel Construction, Inc. v. Wehde & Southwick, Inc.* (1985), 130 Ill. App. 3d 196, 200, 474 N.E. 2d 38, 42.) In *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E. 2d 24, where the plaintiff sought to impose liability on a maintenance supervisor for failure to repair a large and dangerous hole in the highway, the court illustrated the reasons for public official immunity:

"To hold the defendant liable in this case would be productive of many problems. Who, in the chain of command concerning state highways would be responsible? As orders filter down and reports filter up, would each individual in line be personally responsible? What if budget deficiencies due to insufficient legislative appropriations required a restriction in repair work so that only half the holes in the State's highways could be filled? Moreover, it is common knowledge that no highway is without imperfections. If every rut, hole, or blemish on the highway were to create the possibility of personal liability against one or more employees of the State Highway Department, it would be impossible to find employees willing to serve under such conditions." (107 Ill. App. 2d 239, 246, 246 N.E. 2d 24, 28.)

In addition to concerns over personal financial liability, it has been recognized that "[e]qually important are public liability and an officer's legitimate fear of defending his many policy choices in court." (*Kelly v. Ogilvie* (1965), 64 Ill. App. 2d 144, 148, 212 N.E. 2d 279, 281.) Public official immunity is granted because a good-faith mistake in judgment ought not to subject a public decisionmaker to a lawsuit. The courts reason that any other rule would be a great hardship on public officials and would discourage citizens from seeking public positions. *McCormick v. Burt* (1880), 95 Ill. 263, 266.

■■ When application of the doctrine of public official immunity is urged, the critical question is whether the employee's conduct was "discretionary" or merely "ministerial," with the employee or State official incurring liability only where his actions were not "discretionary." (*Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 1001, 372 N.E. 2d 1131, 1134.) In *Madden*, the appellate court compared cases where the doctrine was found applicable to cases where the State employee was held personally liable and reasoned that:

> "[t]he underlying public policy that public officials ought to be free to exercise their judgment based upon '[their] best perception of public needs' [citation], does not apply when the action of the public official does not involve a 'governmental' decision. Thus, an act is held to be 'discretionary' not merely because it involves the exercise of judgment and skill ***, but because the act is essentially 'governmental in character'. [Citations.]" 56 Ill. App. 3d 997, 1002, 372 N.E. 2d 1131, 1134.

In *Madden*, the court recognized that "cases holding public officials to have acted within their official discretion have generally involved actions and duties unique to a particular public office." (56 Ill. App. 3d 997, 1001, 372 N.E. 2d 1131, 1134.) Other reported decisions involving the same rationale are: *Anderberg v. Newman* (1972), 5 Ill. App. 3d 736, 283 N.E. 2d 904 (abstract of opinion) (in which the decision of State-employed doctors to release plaintiff's mother from State mental institution knowing of her suicidal tendencies was held to be in exercise of their official discretion, and in exercise thereof defendants would be protected from individual civil liability for death of mother); *Lusietto v. Kingan* (1969), 107 Ill. App. 2d 239, 246 N.E. 2d 24 (where the duty of highway maintenance supervisor to supervise maintenance of portion of State highway where fatal automobile accident occurred was determined to be a duty owed to public generally and not to an individual, so that supervisor could not be held individually liable for having failed to either fill particular hole that caused injury or to have posted a barricade in some way); *Kelly v.*

*Ogilvie* (1965), 64 Ill. App. 2d 144, 212 N.E. 2d 279, *aff'd.* (1966), 35 Ill. 2d 297, 220 N.E. 2d 174 (in which a sheriff and warden were held not to be personally liable for results of administrative decision to use the "barn boss" system for policing the county jail); *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E. 2d 149 (a case in which the EPA director and deputy director were held to have acted within their official discretion in incurring litigation costs for proceedings brought by EPA before the Pollution Control Board); and *Mora v. State* (1977), 68 Ill. 2d 223, 369 N.E. 2d 868 (where it was determined that the district head of State Department of Transportation, who was sued by automobile passengers for injuries sustained in automobile accident, could not be charged with individual liability for failure to establish no-passing zone, in that to do so was a discretionary activity).

The distinction between "discretionary" and "ministerial" acts becomes apparent when the cases above are contrasted with cases such as *Pree v. Hymbaugh* (1959), 23 Ill. App. 2d 211, 162 N.E. 2d 297 (township highway commissioner held personally liable for injuries occasioned by his negligent operation of a township truck); *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E. 2d 1131 (suit could be maintained against the estate of a State-employed physician whose alleged negligence in attending an inmate of a State correctional facility caused the latter's death, inasmuch as the duties allegedly breached by the physician were those which every doctor owes his patient, rather than obligations incurred solely by virtue of holding a public office); and *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E. 2d 885 (defendant medical doctors and a nurse who were employed by the Board of Trustees of University of Illinois, and against whom four separate actions were brought for medical malpractice, were engaged in the same endeavors and functions as those performed by their counterparts in private practice at the time events in question took place, and thus those defendants could not avail themselves of public official immunity).

■ In the instant case, defendant, whom plaintiff repeatedly describes as an agent of DCFS, was at all relevant times acting for an agency charged by statute to provide certain child welfare services (Ill. Rev. Stat. 1985, ch. 23, par. 5001 *et seq.*) and charged by the juvenile court to undertake the guardianship of Kevin and Jeremy Jones (see Ill. Rev. Stat. 1985, ch. 37, par. 705—7). Any duty of the defendant, who is not the legal guardian but was only an agent of the legal guardian, existed solely by reason of her governmental employment. When DCFS returned custody of Kevin and Jeremy to their mother,

apparently pursuant to an order of the juvenile court, Ms. Williams, the mother, rather than DCFS, incurred the immediate duty to protect them. (Ill. Rev. Stat. 1985, ch. 37, par. 701—12.) Custody would have been restored to the mother only after a fitness hearing in juvenile court (Ill. Rev. Stat. 1985, ch. 37, par. 705—8) and the agency's further specific responsibilities would have been delineated by court order or case plan, neither of which appears of record. The defendant's role was only that of an agent of DCFS; the children were not "her [defendant's] wards," as plaintiff attempts to argue in its brief. We find that defendant's actions as complained of in plaintiff's complaint involved an exercise of her discretion in connection with responsibilities flowing from her status as a government employee. Given the particular purpose and duties of DCFS, we further find that the execution of its functions entitles its agent, the defendant, to the protection of public official immunity.

■ In its brief, plaintiff uses the term "social worker" to describe defendant's position. We find this to be insufficient to demonstrate that defendant's duties were other than governmental. We note that the existence of a social worker's duty to his or her client is not settled in this State. (Compare *Martino v. Family Service Agency* (1982), 112 Ill. App. 3d 593, 445 N.E. 2d 6, and *Horak v. Biris* (1985), 130 Ill. App. 3d 140, 474 N.E. 2d 13.) In *Horak*, the defendant was a certified social worker who was alleged to have held himself out as an expert in the field of psychology and mental therapy and as a professional counselor for those experiencing "emotional problems, marriage difficulties, and other conditions which were treatable by the use of psychotherapy, psychiatric techniques, and mental therapy." (130 Ill. App. 3d 140, 141, 474 N.E. 2d 13, 15.) Recognizing that the existence of a duty is a question of law, the court in *Horak* found that the facts as alleged in that case sufficiently established a duty on the part of the defendant, stating: "Defendant held himself out as a social worker licensed by the State to render such assistance and insight. His license placed him in a position of trust, the violation of which would constitute a breach of the fiduciary relationship." (130 Ill. App. 3d 140, 145, 474 N.E. 2d 13, 17.) In the instant case, there is no allegation that defendant was a certified social worker, as was the defendant in *Horak*; that she was licensed by the State in any capacity; or that she held herself out as a State licensee. Plaintiff simply describes defendant as a social worker in a manner that indicates use of that term in generalized sense. A more proper description of an individual in defendant's position would be a "caseworker," a word which is often used interchangeably with "social worker."

By referring to the particular registration requirements of the State of Illinois for social work practitioners, we note distinguishing features in *Horak* which make it inapplicable to the instant case. A certified social worker, such as the defendant in *Horak*, must possess a degree from a graduate school of social work approved by the Department of Registration and Education and must meet the other criteria of the Social Workers Registration Act (Ill. Rev. Stat. 1985, ch. 111, par. 6307). In contrast, registration criteria for a social worker require, with respect to education, only an undergraduate degree (the law does not require special studies in the field of social work) or, in some cases, not even a degree. (Ill. Rev. Stat. 1985, ch. 111, pars. 6307, 6309.) The law specifically recognizes that an individual may be engaged in the field of social work without registering with the Department of Registration and Education, "so long as he does not represent himself as, or use the titles of, 'social worker' or 'certified social worker.'" Ill. Rev. Stat. 1985, ch. 111, par. 6305.

As we noted earlier, there is no allegation that defendant used the aforesaid titles or that she represented herself as possessing State-verified credentials in her field. Plaintiff's own description of defendant as a social worker, absent any allegations of representations made by defendant on her own behalf, are insufficient to establish a legal duty under the criteria of *Horak*, where the defendant was, and held himself out to be, a licensed professional holding a graduate degree from an approved school of social work. Plaintiff's complaint, therefore, does not establish an individual duty on defendant's part. Any obligations of the defendant can only be inferred by virtue of her employment with the State. As such, the exceptions to public official immunity for professionals such as physicians, as discussed in *Madden v. Kuehn* (1978), 56 Ill. App. 3d 997, 372 N.E. 2d 1131, and *Watson v. St. Annes Hospital* (1979), 68 Ill. App. 3d 1048, 386 N.E. 2d 885, are inapplicable to the instant case.

The Illinois courts have created exceptions to the rule of public official immunity for discretionary acts. Two cases from the Third District cited by the defendant in its brief, *Thiele v. Kennedy* (1974), 18 Ill. App. 3d 465, 309 N.E. 2d 394, and *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 448 N.E. 2d 249, have held that immunity for discretionary acts extends to acts that a public employee undertakes in the good-faith exercise of discretion, even if his or her conduct was wilful and wanton. The only conduct to which the immunity does not extend is that based on corrupt or malicious motives. (*Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977, 448 N.E. 2d 249, 251; *Thiele v. Kennedy* (1974), 18 Ill. App. 3d 465, 468, 309 N.E. 2d 394, 396.) Re-

jecting an argument that wilful and wanton conduct eliminated a public employee's immunity, the appellate court in *Thiele* ruled that the immunity applies unless the employee's acts resulted from corrupt or malicious motives. (18 Ill. App. 3d 465, 468, 309 N.E. 2d 394, 396.) In *Larson*, the appellate court affirmed the dismissal of an action against the director of the Department of Corrections and a parole officer, who were alleged to have negligently or wilfully and wantonly released a prisoner who subsequently raped and murdered plaintiff's decedent, it being alleged that defendants failed to supervise such ex-prisoner, knowing that he was a threat to society. Stating that the complaint "sets forth no allegation of corrupt motives, malicious motives, or the intentional misuse of power," the court ruled that dismissal was proper under the doctrine of public officials' immunity. *Larson v. Darnell* (1983), 113 Ill. App. 3d 975, 977, 448 N.E. 2d 249, 251.

Plaintiff in its brief refers us to a "second exception" to public official immunity created in *Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 490 N.E. 2d 77, where the court concluded that immunity does not extend to an employee's wilful and wanton acts. (141 Ill. App. 3d 266, 273, 490 N.E. 2d 77, 81.) Concluding that a second exception exists, the court in *Barth* analyzed the early supreme court case of *McCormick v. Burt* (1880), 95 Ill. 263, noting that the Third District in *Thiele* cited *McCormick*, an early enunciation of the discretion immunity rule, as authority for the proposition that the only exception to discretion immunity is one for acts based on corrupt or malicious motives. The court in *Barth*, however, found that a closer reading of *McCormick* reveals a second exception—wilful and wanton conduct. (*Barth v. Board of Education* (1986), 141 Ill. App. 3d 266, 273, 490 N.E. 2d 77, 81, 82.) Defendant in its brief contends that the *Barth* court overlooked the "bad faith" requirement in its analysis of *McCormick* and did not confront the issue presented in terms of the motivation of the defendant. Moreover, defendant contends that *Barth* was governed by a specific statutory provision (section 2—202 of the Local Governmental and Governmental Employees Tort Immunity Act—Ill. Rev. Stat. 1985, ch. 85, par. 2—202) which does not apply to the defendant State employee in the instant case.

■ We find it unnecessary to address the issue as to whether wilful and wanton conduct is an exception to the rule of public official immunity for discretionary acts. After examining the specific allegations made in the complaint in the instant case, we find the plaintiff's complaint was properly dismissed on the basis of public official immunity. Not only does plaintiff's complaint fail to plead any bad faith or

motive of the defendant, but it also does not contain specific allegations of wilful and wanton conduct, even if such conduct were found to overcome the bar of immunity. While plaintiff's complaint uses the terms "wilful and wanton" to describe plaintiff's alleged actions, this descriptive language is a mere conclusion, which is not admitted for purposes of a motion to dismiss. (*Burr v. State Bank* (1951), 344 Ill. App. 332, 339, 100 N.E. 2d 773, 777.) To sufficiently plead a cause of action for wilful and wanton conduct, a complaint "must allege facts demonstrating a duty of defendant and a breach of that duty which proximately caused the plaintiff's injury." (*Newby v. Lake Zurich Community Unit District No. 95* (1985), 136 Ill. App. 3d 92, 97, 482 N.E. 2d 1061, 1065.) Mere conclusional allegations of wilful and wanton misconduct are not sufficient; facts must be alleged from which the law would raise a duty, and a showing that the omission of such duty resulted in injury. (136 Ill. App. 3d 92, 97, 482 N.E. 2d 1061, 1066-67.) As noted earlier, any duty which plaintiff alleges is that of a legal guardian, as distinguished from that of a legal custodian. Plaintiff expressly describes DCFS in its complaint as the guardian of Kevin and Jeremy Jones. On the basis of this allegation any duty owed to these children is owed by the agency, rather than by any individual employee. Moreover, in arguing that defendant owed a duty to the children, plaintiff abandons any attempt to hold defendant liable for the agency's duty and relies solely on the asserted duty of defendant under a "social worker-patient relationship." As we have noted earlier, the complaint is insufficient to state a claim under this theory.

■ When custody of the children was returned to their mother, she incurred the duty to protect and care for them (Ill. Rev. Stat. 1985, ch. 37, par. 701—12), and their claimed injury would have been proximately caused by Ms. Williams' breach of her duty to them. If there are further duties owing to Kevin and Jeremy by their guardian, the plaintiff must identify that duty and seek to assert any tort liability against the named and responsible guardian. The complaint in the instant case fails to do so. Accordingly, we find that it was properly dismissed by the circuit court.

■ As an aside, we note that plaintiff's brief omits any recognition of its count III allegation regarding Jessie Jones and does not distinguish this child's situation from that of Kevin and Jeremy Jones. As we noted earlier in this opinion, the allegations of plaintiff's complaint disclose that there is no guardian-ward relationship between Jessie Jones and DCFS. Plaintiff alleged only that defendant was assigned to "monitor" the home of Virginia Williams, apparently hoping to imply, on this basis, some duty owed to Jessie by the defendant. We

find that count III is not only deficient as previously discussed with respect to counts I and II, but it also lacks sufficient factual allegations to infer any sort of relationship between Jessie and the defendant upon which a duty to the minor might be founded. Defendant's alleged assignment to "monitor" the home of Virginia Williams was in connection with the agency's guardianship of Kevin and Jeremy and the transfer of their custody; no specific assignment regarding Jessie, who was apparently in the mother's care, has been described. Plaintiff has offered no theory which would demonstrate, as a matter of law, that a duty existed on the basis of the tenuous connections alleged between defendant and Jessie. For this reason and the reasons stated above, we also conclude that count III of plaintiff's complaint also was properly dismissed.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

KARNS, P.J., and LEWIS,* J., concur.