**Christopher R. YOUKER,**
**Plaintiff–Appellant,**

v.

**Edward E. SCHOENENBERGER and**
**Town of Milton, Defendants–**
**Appellees.**

**No. 92–2136.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 30, 1993.

Decided April 20, 1994.

Ernest T. Rossiello (argued), Rossiello & Associates, Chicago, IL, for plaintiff-appellant.

Francis P. Kasbohm (argued), Michael F. Bonaguro, James F. Best, Matthew E. VanCleave, Fraterrigo, Best & Beranek, Chicago, IL, John F. Garrow, Rathje, Woodward, Dyer & Hurt, Wheaton, IL, for defendants-appellees.

Before FAIRCHILD, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant, Christopher Youker, appeals a judgment of the U.S. District Court for the Northern District of Illinois granting summary judgment in favor of the defendants, Edward Schoenenberger and the Town of Milton, Illinois, on the plaintiff's 42 U.S.C. § 1983 claim for denial of First Amendment rights and his state law retaliatory discharge claim. We affirm.

## BACKGROUND

The plaintiff, Christopher Youker, was a deputy tax assessor for defendant Town of Milton, Illinois ("Milton") from 1984 until his discharge on July 26, 1990. Defendant, Edward Schoenenberger, assumed his role as the duly elected Tax Assessor for Milton on January 1, 1990 replacing his predecessor, Gordon Boyd. Schoenenberger appointed Larry Gage as Chief Deputy Assessor to oversee the sixteen employees and to run the day-to-day affairs of the Assessor's Office.

A review of the record reveals that Youker's relationship with the other employees in the office was both contentious and confrontational. At different times during 1990, Youker questioned employees for: making personal phone calls during business hours, providing citizens with incorrect tax information, using Schoenenberger's signature stamp, performing functions not within the employee's qualifications, improperly filing documents, and attending to personal affairs during business hours (the employee was studying for the Illinois Assessor's Office certification with Schoenenberger's permission). The latter incident resulted in the young female employee bursting into tears and running to her supervisor to report the encounter. Based on these numerous confrontations, Schoenenberger had Chief Deputy Assessor Gage instruct Youker to report all conflicts with fellow employees to Gage rather than personally confronting an employee.

On July 25, 1990, an employee of the Assessor's Office reported another confrontation with the plaintiff in which Youker was "screaming" at her in the presence of taxpayers in the office. That afternoon, Schoenenberger instructed Gage to talk to Youker and forbid him from mistreating co-workers. The very next morning, when Youker verbally confronted a different female employee in the same manner he had the previous day, Schoenenberger called Youker into his office to inquire of his abusive behavior. When Youker failed to heed the rebuke, Schoenenberger discharged him. In response to

Youker's request for a written explanation of the reasons for his discharge, Schoenenberger hastily wrote a note documenting the reasons as poor attitude, poor job performance, refusal to change his behavior and an unspecified threat directed at Schoenenberger.[1]

In addition to Youker's acrimonious relationship with several female employees in the office, an event occurred that Youker felt was responsible for his ouster. Part of the plaintiff's job description included safeguarding against fraudulent homestead exemption claims.[2] Perhaps being somewhat overzealous in performing his duties, the plaintiff sent a letter to the Assessor of a neighboring township (Bloomingdale) notifying him that a certain landowner in Bloomingdale (not within the Milton Assessor's jurisdiction) was claiming two exemptions but was only entitled to one. The letter, dated July 19, 1990, was sent on Milton Township Assessor stationery and signed with a stamp of Edward Schoenenberger's signature. The Bloomingdale Assessor replied the next day via letter and politely requested the Milton Assessor's office to mind its own business. The response letter added that the property owner in question was entitled to both exemptions under the statute because one property was subject to a lease agreement.[3]

Upon receiving the letter from the Bloomingdale Assessor, Edward Schoenenberger was "stunned" because he was unaware that anyone in his office was sending out letters bearing his signature without his approval. After calling the Bloomingdale Assessor's Office to ascertain the substance of the July 19, 1990 letter, Schoenenberger inquired around the office and discovered that Youker had sent the letter. Thereafter Schoenenberger instructed Larry Gage to talk to Youker and make clear that he was never to send out correspondence with Schoenenberger's signature without first receiving authorization. Schoenenberger testified that he had not authorized Youker to send out correspondence with his stamped signature while Youker testified that under the previous Assessor he had been trained to draft letters with the signature stamp but that he would submit them to the Assessor for approval. Youker testified that he did not follow this procedure with Schoenenberger because he did not think the new Assessor wanted to be bothered with clerical matters. Youker believes he was discharged because of his July 19, 1990 letter to the Bloomingdale Assessor.

## ISSUES

The plaintiff argues that the trial court erred in finding his speech (notifying the Bloomingdale assessor of the allegedly fraudulent homestead exemption) was not constitutionally protected under Count I. He also contends that the court erred in dismissing Count II on the grounds of defendants' immunity under the Illinois Tort Immunity Act.

## DISCUSSION

### Count I

In Count I, the plaintiff alleges Schoenenberger violated his civil rights by discharging him for exercising his First Amendment rights. The trial court granted summary judgment on Count I because Youker failed to establish that he was discharged for speech that was a matter of public concern finding that Youker's speech was by an employee in the course of his employment rather than speech by a citizen on a matter of public concern. We review the grant of summary judgment *de novo* and "utilize the same standard of decision making as that employed by the district court." *Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1118 (7th Cir.1992) (quoting *McMillian v. Sveta-*

---

1. The threat allegedly occurred on the morning of July 26, 1990, when Schoenenberger was confronting Youker for his abusive treatment of co-workers and Youker allegedly responded by saying he would "get[ ] even with [you] if it took the rest of his life."

2. A homeowner who resides in his/her home is entitled to one homestead exemption which results in a reduction in property taxes. Ill.Rev. Stat. ch. 120 ¶ 500.23–1a (now found in 35 ILCS 205/19.23–1a (Smith–Hurd 1993). An additional exemption may be obtained for a second property if it is subject to a leasehold agreement. *Id.*

3. Youker testified that he had not read the statute and that the rule (statute) was "very confusing" and "a lot of double talk."

*noff,* 878 F.2d 186, 188 (7th Cir.1989)). "The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact." *Id.*

▮ " 'Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record.' [*Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ]. We have previously 'recognized that content is the greatest single factor in the Connick inquiry.' *Berg v. Hunter,* 854 F.2d 238, 243 (7th Cir.1988) [, *cert. denied,* 489 U.S. 1053 [109 S.Ct. 1314, 103 L.Ed.2d 583 (1989) ]." *Churchill v. Waters,* 977 F.2d 1114, 1121 (7th Cir.1992), *cert. granted,* —— U.S. ——, 113 S.Ct. 2991, 125 L.Ed.2d 686 (1993). If the speech constitutes a matter of public concern then "[o]ur task, as we defined it in *Pickering,* is to seek 'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Connick,* 461 U.S. at 142, 103 S.Ct. at 1687 (quoting *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968)).

Thus to prevail in his civil rights claim the plaintiff must establish that his speech was a matter of public concern. In this regard, *Connick* noted that "[t]he repeated emphasis in *Pickering* on the right of a public employee '*as a citizen,* in commenting upon matters of public concern,' was not accidental." *Connick,* 461 U.S. at 143, 103 S.Ct. at 1688 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734–35). Seizing upon this language, the district court rejected the plaintiff's claim because Youker's speech was not "as a citizen" but rather as an employee in the course of his employment.

▮ While we are in agreement with the district court that the speech is not protected, we reach our conclusion on slightly different grounds than the trial court. Simply

stated, the speech in the present case is not protected because it was not speech as a citizen because Youker represented, without authority, that it was Assessor Schoenenberger's official speech. The record is eminently clear that Youker wrote the letter to the Bloomingdale Assessor on stationery of the Milton Township Assessor (Edward E. Schoenenberger's name appears on the top of the stationery). Moreover, Youker did not sign the letter with his own name but with Schoenenberger's stamped signature. Schoenenberger testified that Youker did not have authorization to send out letters bearing Schoenenberger's signature while Youker maintained that under the former Assessor, Gordon Boyd, he frequently sent out letters concerning homestead exemptions bearing Boyd's signature but only after Boyd had read and approved the letter. Youker further testified that Schoenenberger instructed the office staff to continue the same office procedures they followed under the previous Assessor thus he believed he was authorized to send out letters with Schoenenberger's stamped signature. Even if Youker is correct in stating that he was authorized during the past administration to send out letters with the Assessor's stamped signature, he failed to follow the procedures he observed under the previous Assessor because he neither submitted the letter to Schoenenberger nor did he gain his approval before sending it. Based on the fact Youker used Milton Township's stationery and, in addition, affixed the Assessor's stamped signature to the letter without approval or at least contrary to prior procedure, we do not understand how Youker can claim that the contents of the letter (relating to homestead exemptions) was his personal speech. Finally, because Youker was an employee of the Milton Assessor's office, and, when acting in that capacity, identifying fraud in homestead exemptions was part of his responsibilities,[4] the letter represented not his personal opinion (speech) but the opinion of the Milton Assessor's Office. There is simply no evidence that Youker was speaking "as a citizen" on a matter of

---

**4.** There is no evidence that the Milton Township Assessor has jurisdiction to advise the Bloomingdale Township Assessor concerning homestead exemptions in Bloomingdale Township. Indeed,

the Bloomingdale Assessor's letter in response to Youker's letter strongly suggests that the Milton Assessor has no jurisdiction over Bloomingdale's granting of homestead exemptions.

public concern. *Connick*, 461 U.S. at 143, 103 S.Ct. at 1688. Thus for the above enumerated reasons we affirm the trial court's grant of summary judgment in favor of the defendant on Count I.[5] Because we hold that the speech is not protected, we need not determine whether the government's interest in promoting the efficiency of the public services it performs outweighs Youker's interest in speaking on a matter of public concern.

### Count II

In Count II, the plaintiff alleged that the defendants "maliciously discharged plaintiff from his employment, in violation of state and federal public policy, in retaliation for his reporting to tax assessors neighboring the TOWN OF MILTON that certain real property owners were declaring illegal duplicative real estate (homestead) exemptions...." The district court granted summary judgment in favor of the defendants on Count II finding that they were immune under the Illinois Tort Immunity Act ("ITIA"). Ill. Rev.Stat. ch. 85, § 2–201 (now found at 745 ILCS 10/2–201 (Smith–Hurd 1993)).

In *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 154 Ill.Dec. 649, 654, 568 N.E.2d 870, 875 (1991), the Illinois Supreme Court stated

"This court has generally adhered to the proposition that 'an employer may discharge an employee-at-will for any reason or for no reason.' [*Barr v. Kelso–Burnett Co.* (1985) 106 Ill.2d 520, 88 Ill.Dec. 628, 478 N.E.2d 1354]. Nonetheless, the court has recognized a limited and narrow cause of action for the tort of retaliatory discharge. [*See Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981); *Kelsay v. Motorola, Inc.*, 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1978)]. To state a valid retal-

iatory discharge claim, an employee must show that he was dismissed in retaliation for his activities, and that the dismissal was in contravention of a clearly mandated public policy." *Palmateer*, [85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876].

*Id.*[6]

In the district court's first decision (denying defendants' motion to dismiss for failure to state a claim), the court set forth a rather detailed analysis of *Fellhauer* and found it distinguishable from the case before us because in *Fellhauer* the Illinois Supreme Court found it significant that the Illinois legislature had conferred broad discretional authority on Illinois mayors to discharge employees subject to city council review. In the district court's second decision (granting defendants' motion of for summary judgment), the court never mentioned *Fellhauer*, much less the elements of a retaliatory discharge claim by an at-will employee. The court merely quoted the Illinois Tort Immunity Act and then added

"However, public officials' immunity for discretionary acts under the Tort Immunity Act does not extend to (1) public employee's acts based on corrupt or malicious motives, or (2) public employee's willful and wanton acts.... Youker fails to proffer any evidence that Schoenenberger's conduct was based on corrupt or malicious motives or that his actions were willful or wanton. Accordingly, defendants' motion for summary judgment on Count II is granted."

If the district court was correct in finding that Schoenenberger and Milton are immune under the ITIA, then it is unnecessary for us to engage in the *Fellhauer* analysis as to whether there was a clearly mandated public

---

**5.** We add that there is merit to defendant's other arguments. Notably that plaintiff has failed to rebut defendant's evidence that Youker was discharged for his poor attitude and continually creating confrontational situations with the office staff. Moreover, if Youker was fired for sending the letter with Schoenenberger's signature, without authority, the *Pickering* balance might well be struck in favor of Schoenenberger. Finally, there is a sound argument that the defendant has qualified immunity from suit. Because we affirm the district court on the basis that the

speech was not Christopher Youker's but rather Youker purportedly speaking for Edward Schoenenberger through the use of Milton Township stationery with Schoenenberger's stamped signature and without proper approval, we need not reach these other bases for affirmance.

**6.** At no time during this litigation has Youker asserted that he possessed some sort of entitlement to his clerical job, thus we treat him as an at-will employee.

policy at issue. Based on the record before us, we are in agreement with the trial court that the defendants are immune under the ITIA from liability for Count II (retaliatory discharge).

■ The Illinois Tort Immunity Act § 2–201 reads in part

"Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."

Ill.Rev.Stat. ch. 85, § 2–201 (now at 745 ILCS 10/2–201). As pointed out in the district court opinion this immunity is not absolute. In *Barth v. Board of Educ. of the City of Chicago*, 141 Ill.App.3d 266, 95 Ill.Dec. 604, 490 N.E.2d 77 (1986), the court stated that immunity "does not extend to (1) a public employee's acts based on corrupt or malicious motives, or (2) a public employee's willful and wanton acts." *Id.* 141 Ill.App.3d 266, 95 Ill.Dec. 604, 490 N.E.2d at 81. In a recent case in which a plaintiff alleged retaliatory discharge, the U.S. District Court for the Northern District of Illinois held in *Koenig v. Board of Educ. of Elem. Sch. Dist. 102*, No. 93 C 2568, 1993 WL 532472, 1993 U.S.Dist. LEXIS 17967 (N.D.Ill. Dec. 15, 1993),

"A mere claim of dismissal is not sufficient to plead willful and wanton misconduct. *Plocher v. City of Highland*, 59 Ill.App.3d 697, 375 N.E.2d 1016 [1020], 16 Ill.Dec. 909, 913 (5th Dist.1978). Further mere conclusory allegations of willful and wanton conduct are insufficient to overcome a public employee's immunity. *Midamerica Trust Co. v. Moffatt*, 158 Ill. App.3d 372, 511 N.E.2d 964 [970], 110 Ill. Dec. 787, 793 (5th Dist.1987). The plaintiff must plead in detail specific facts showing bad faith and improper motive. *Midamerica*, 110 Ill.Dec. at 793 [511 N.E.2d at 970]; [*Munizza v. City of Chicago*, 222

Ill.App.3d 50, 583 N.E.2d 561 [566], 164 Ill.Dec. 645, 650 (1st Dist.1991)]."

*Id.* 1993 WL 532472 at *9–10, at *4, 1993 U.S.Dist. LEXIS 17967. In *Plocher* (cited in *Koenig*), the discharged employee also sought to hold city officials liable for his unlawful discharge. The court held that

"[t]he plaintiff merely alleged the conclusion that the action of the city officials in dismissing him was 'willful, wanton, malicious.' A complaint may not rest upon conclusions of fact unsupported by allegations of specific facts from which such conclusions may be drawn.... Mere allegations of the fact of dismissal without more may not be relied upon to state a cause of action in tort for wilful and wanton misconduct."

*Plocher*, 59 Ill.App.3d 697, 16 Ill.Dec. at 913, 375 N.E.2d at 1020.

■ In the case before us, the plaintiff alleged defendants "maliciously discharged plaintiff from his employment in violation of state and federal public policy...." As in the cases cited above, the mere inclusion of the word "malicious" in a complaint cannot serve to transform an ordinary tort claim into an action for willful, wanton and malicious conduct. In fact, at oral argument the plaintiff's counsel conceded this very point:

THE COURT: "What specific evidence do you have to establish corruption or willful or wanton action on Schoenenberger's part pursuant to the ITIA?"

COUNSEL: "Plaintiff never raised that, the district court came up with that. That's nowhere in plaintiff's pleadings. That's why we say the district court was clearly wrong in granting summary judgment on the state law claim.... There's none [evidence] as far as I know about malice. *It's just an ordinary Illinois state tort law [claim] for retaliatory discharge.* We never pleaded the Illinois Tort Immunity Act. I don't know where that came up from. It's not in plaintiff's complaint. The district judge put that in her opinion." [7]

---

7. We agree with plaintiff's counsel that the complaint did not plead the Illinois Tort Immunity Act (the defendants' pleaded the Act as an affirmative defense). The district court mistakenly stated that "Youker alternatively claims that his termination violates the Illinois Tort Immunity Act."

(Emphasis added). Plaintiff not only failed to allege in any pleading, but also failed to produce evidence of any willful, wanton or malicious acts on the part of the defendants. Indeed, counsel acknowledged that the claim is "just an ordinary Illinois state tort law [claim] for retaliatory discharge." Based on this admission, the holding in *Koenig,* and the cases cited therein, we hold that the trial court properly dismissed plaintiff's claim for retaliatory discharge because the defendants are immune from such a suit under the Illinois Tort Immunity Act.

### Rule to Show Cause

This court has sanctioned the plaintiff's attorney, Ernest T. Rossiello, on two separate occasions in the present case for referring to evidence in his appellate briefs not contained in the district court record. His opening brief on appeal was stricken on June 10, 1993 pursuant to an objection by the defense counsel and his amended brief was also stricken on August 5, 1993 for the reason set forth above. He was ordered to personally pay defense counsel's expenses in moving to strike each brief. The defendants incurred their expenses filing detailed motions to strike the plaintiff's brief and to dismiss the appeal. In the August 5, 1993 court order directing Rossiello to personally pay defendant's costs in responding to the second stricken brief, a panel of this court, having observed that Rossiello had failed to comply with the court's previous order, also directed Rossiello to show cause why the court should not suspend or discipline him.

In Rossiello's ANSWER TO RULE TO SHOW CAUSE, he attempts to explain that for twenty-two years of practice he has regularly cited to deposition testimony in summary judgment motions in the district court without actually filing the deposition transcript when the testimony is undisputed. He alleges that he followed a similar practice in this case at the trial level and neither the defendant nor the trial judge objected perhaps because the deposition testimony did not relate to a material issue. Rossiello believed that this practice complied with Fed. R.App.Pro. 10(a) and *Henn v. National Geographic Society,* 819 F.2d 824 (7th Cir.1987), *cert. denied,* 484 U.S. 964, 108 S.Ct. 454, 98

L.Ed.2d 394 (1987). It appears also that he had asked the district court by motion to add the depositions to the record. The motion was denied, as was a similar motion presented to this court because those motions did not adequately inform the courts that the depositions should be deemed filed and part of the record because they had been brought to the attention of the district court according to local practice. *See* Rule of Appellate Procedure 10(e). Thus, we hold that there was good cause for the previous imposition of sanctions for refusal to follow this court's express orders but that no further sanction or discipline need be taken against Rossiello. We are hopeful that he has learned his lesson and will comply with this court's orders in the future.

AFFIRMED.

FAIRCHILD, Circuit Judge, concurring.

I join in the part of the opinion which deals with the merits. As to the part of the opinion entitled "Rule to Show Cause," I concur in the result, *i.e.,* no further sanction.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. I also join that part of the opinion that addresses the merits of the case. I write separately to elaborate on why I believe that we ought to discharge the rule to show cause issued by the motions panel to the plaintiff's attorney.

The motions panel granted two successive motions to strike the brief of the appellant on the ground that it referred to depositions that were not part of the appellate record. It appears that reference was made to those depositions in the district court but that, as permitted by local rule, those depositions were not actually filed with the court. Before submitting his original brief on appeal, counsel had filed a motion asking that the district court supplement the record on appeal by adding those depositions. The motion was denied; days later, a similar motion was presented to this court and denied. When counsel nevertheless referred to this material in his brief, the brief was stricken and counsel was required to pay the additional expenses incurred by the opposing party

in conforming its briefs to those later filed by the appellant in response to the court's directive.

Counsel does not ask that we revisit the decisions of the motions panel and, although I see no inequity in not revisiting them on our own motion, I am doubtful as to the correctness of those decisions. It is indeed ambiguous whether, when a local rule does not require the filing of a deposition to ensure its consideration in the disposition of a motion, it is necessary to include the text of that deposition in the record on appeal in order for this court to consider it.[1] The leading authority on this issue is *Henn v. National Geographic Society*, 819 F.2d 824, 831 (7th Cir.), *cert. denied*, 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). It simply requires that only depositions that have been filed before the court, *or to which the district court's attention has been invited*, be considered as parts of the record on appeal. A deposition to which the district court's attention has been drawn but has not been filed pursuant to a local rule would appear to fall within the ambit of *Henn*'s holding.

Unfortunately, neither the motion to supplement the record before the district court nor the motion before this court adequately apprised the courts that counsel was simply asking that the depositions be part of the appellate record on the ground that reference had been made to them in the district court pursuant to the local rule.[2] While a motion to supplement the record appears to have been unnecessary, the ambiguity of the motion did misfocus the court's attention.

This miscommunication is hardly a basis for further disciplinary action. At the very least, the matter ought to be taken no fur-ther. Clarification of the rules to ensure that the holding of *Henn* is not misinterpreted by court or counsel is certainly indicated.

---

1. Indeed our Circuit Rule 10 provides that depositions will not be included in the record "unless specifically requested by a party by item and date of filing within ten days after the notice of appeal is filed or unless specifically ordered by this court[.]"

2. Counsel appears to have first informed the motions panel of his reliance on local practice in his answer to the motion to strike the amended brief. The court addressed the matter as follows:
    The amended brief contains still more references to depositions that are not part of the record on appeal, as indeed they were not part of the record in the district court. The expla-nation given in the response to the latest motion to strike is that similar references were contained in plaintiff's papers filed in the district court, so that now plaintiff is referring not to the depositions, which are not in the record, but to the earlier references, which are. That one has referred to extra-record materials in the past is no excuse for doing it again. Otherwise one could smuggle any extra-record material into the record by the simple expedient of referring to it twice. Our order was clear. One who wishes to use depositions must get them into the record. Appellant did not. The references are improper.