In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2407

Gerardo D. Gonzalez,

Plaintiff-Appellant,

v.

City of Chicago, an Illinois Municipal
Corporation, Sergeant Hanson, individually,
and Lieutenant Sullivan, individually,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 5103--George M. Marovich, Judge.

Argued November 30, 2000--Decided February 13, 2001

Before Ripple, Manion, and Kanne, Circuit Judges.

Manion, Circuit Judge.  Gerardo Gonzalez sued the
City of Chicago, two of his supervisors, and
Chicago's Chief of Police, alleging retaliation
for exercising his First Amendment right to free
speech in violation of 42 U.S.C. sec. 1983 and
retaliatory discharge under Illinois law. The
district court granted the defendants' motion to
dismiss with respect to the sec. 1983 claim on
the merits and declined to exercise jurisdiction
over the state law claim. Gonzalez appeals. We
affirm.

I.

Beginning in July, 1991, Gerardo Gonzalez worked
as a civilian employee of the Chicago Police
Department's Office of Professional Standards
(OPS). As an OPS investigator, he looked into
public complaints against officers in the Chicago
Police Department for police misconduct or
brutality, and following his investigations
Gonzalez was required to summarize his
conclusions in a written report. Gonzalez
completed between fifty and one hundred such
reports per month. All indications are that
Gonzalez's job performance was satisfactory.

In June 1998, Gonzalez resigned from OPS and

joined the Chicago Police Department. On November 17, 1998, he graduated from the Police Academy and was subsequently assigned to the 18th District. During his tenure at OPS, Gonzalez investigated at least nine 18th District officers, and one investigation caused the termination of 18th District officer Hugh Robinson. He also investigated the father of an officer currently assigned to the 18th District, Sergeant Hanson.

Apparently due to these and perhaps other OPS investigations, Gonzalez allegedly met great hostility at the 18th District. During his ten weeks of field training, Gonzalez received two negative performance reports which he claims were "predicated upon falsified subjective information . . . and motivated by retaliation for Plaintiff's exercise of his fair constitutional right of free speech . . . while employed by OPS." As a result of these evaluation reports, the Police Department suspended Gonzalez pending termination proceedings. On April 14, 1999, the Police Department terminated Gonzalez from his position.

After he was fired, Gonzalez sued the City of Chicago, the Chief of Police, and two of his supervisors, claiming the defendants retaliated against him for his speech as an OPS investigator in violation of sec. 1983 and Illinois law. The district court concluded that because his speech at OPS was that of an employee performing his job and not protected speech by a citizen which touched upon matters of public concern, the defendants had not violated his First Amendment rights. Having dismissed the only federal claim, the district court then declined to exercise jurisdiction over his state law claim of retaliatory discharge. Gonzalez appeals.

II.

The district court dismissed Gonzalez's complaint for failure to state a First Amendment claim. We review such a dismissal de novo, accepting all well-pleaded factual allegations in the complaint as true, and make all permissible inferences in Gonzalez's favor. See Kyle v. Morton High School, 144 F.3d 448, 450 (7th Cir. 1998).

First Amendment claims by public employees asserting a violation against protected speech are analyzed under a two-step test. The first step, set forth in Connick v. Myers, is to determine whether the employee speaks "as a citizen upon matters of public concern." 461 U.S. 138, 147 (1983). The second step is to balance the "interests of the [employee], as a citizen,

in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). In determining whether speech is protected at step one, we must consider the content, form, and context of the speech. Connick, 461 U.S. at 147.

Where speech is intended to serve a private or personal interest, it may not meet the standards for First Amendment protected speech. See Kokkinis v. Ivkovich, 185 F.3d 840, 844 (7th Cir. 1999). "Our precedent makes clear . . . that speaking up on a topic that may be deemed one of public importance does not automatically mean the employee's statements address a matter of public concern as that term is employed in Connick." Id.

The present case, however, occupies the flip side of the coin. Gonzalez's statements are not self-serving private statements (except in the sense that performance of one's job is self-serving), but written statements for internal use in the Department. They are reports on his investigations as required by his employer, and as such, they lack First Amendment protection. Both the Connick and Pickering cases explain that the First Amendment offers protection to speech uttered "as a citizen." See Connick, 461 U.S. at 147; Pickering, 391 U.S. at 568. But the City of Chicago's Office of Public Standards does not have First Amendment rights. Only its employees do. As the district court stated, "these reports were created in the scope of [Gonzalez's] ordinary job responsibilities. This fact lends support for the conclusion that Gonzalez was not acting as a 'concerned citizen' or 'member of the general public,' but merely as an employee." Gonzalez v. City of Chicago, 2000 WL 748136, *4 (N.D. Ill. May 2, 2000).

If Gonzalez were writing reports of police misconduct, and his supervisors told him to rewrite the reports so as not to disclose police corruption, Gonzalez would have a First Amendment right to expose the police cover-up to the public. But in that circumstance, Gonzalez would be acting beyond his employment capacity. Instead of simply performing his job of writing truthful, internal reports, he would be speaking as a citizen on a matter of public concern--a police cover-up.

Thus, the question before us is whether a public employee receives First Amendment protection for producing writings that may address matters of public concern, but are also a routine requirement of the job. Gonzalez may well have been motivated in part as a good citizen when he

accepted the employment duties of reporting police misconduct. Nevertheless, he was clearly acting entirely in an employment capacity when he made those reports. The form of his speech (routine official reports), the content of the speech (required opinions on misconduct), and the context (pursuant to duties of the job), all indicate that Gonzalez did not speak "as a citizen" on a matter of public concern.

This situation is distinguishable from our recent decision in Bonds v. Milwaukee County, 207 F.3d 969 (7th Cir. 2000). In that case, Michael Bonds, a public employee, spoke at a panel at the request, and in place of, Alderman Fred Gordon. We held that, despite the fact that the speech was given pursuant to employment duties, it was protected by the First Amendment based on the speech's content. See id. at 980-81 ("Even though he participated in the forum at Alderman Gordon's direction, Bonds articulated many independent views . . . and did not serve as a mere surrogate for Council positions. Gordon testified that Bonds spoke for himself at the forum and that Bonds's criticisms . . . went well beyond the scope of Gordon's instructions.").

All of Gonzalez's speech at issue--the written reports--was mandated in his capacity as an OPS investigator. While police misconduct is certainly a matter of public concern, the internal reports were simply a summary of his findings following his official investigations. The few courts that have addressed circumstances like these have found that the speech was not protected by the First Amendment. See, e.g., Koch v. City of Hutchinson, 847 F.2d 1436 (10th Cir. 1988), cert. denied, 488 U.S. 909 (1988) (routine report of fire marshal regarding cause of a fire did not address a matter of public concern); Cahill v. O'Donnell, 75 F.Supp.2d 264 (S.D.N.Y. 1999) (speech by police department Internal Affairs employees made in course of "day-to-day professional obligations" not protected). We agree with these holdings. Speech which is made in all respects as part of the employee's job duties is generally not the protected expression of the public employee. "Speech that relates primarily to . . . internal office affairs, in which the individual speaks as an employee rather than as a citizen" is not protected by the First Amendment. Id. at 272.

Youker v. Schoenenberger, 22 F.3d 163 (7th Cir. 1994), also supports this conclusion. That decision involved the claim of a deputy tax assessor (Youker) for the town of Milton, Illinois, that he was fired for speech regarding an allegedly fraudulent homestead exemption. Youker had sent a letter criticizing a tax

assessment in a neighboring community, and the letter was signed with the stamped signature of the assessor, Youker's boss. This court held that Youker's speech was not protected because "it was not speech as a citizen because Youker represented, without authority, that [the speech] was [his supervisor's] official speech." Id. at 166. We added, however, that "because Youker was an employee of the Milton Assessor's office, and, when acting in that capacity, identifying fraud in homestead exemptions was part of his responsibilities, the letter represented not his personal opinion (speech) but the opinion of the Milton Assessor's Office." Id. Accordingly, we held that Youker was not "speaking 'as a citizen' on a matter of public concern." Id. at 166-67.

   For Gonzalez, there is no distinction from any of his allegedly protected speech and the required duties of his job. A failure to carry out this particular speech--writing accurate reports of assigned investigations--would be a dereliction of Gonzalez's employment duties. Indeed, Gonzalez's attorney conceded at oral argument that Gonzalez could have been fired had he not produced the reports. Here Gonzalez's speech was clearly speech by an employee in the course of his employment, rather than speech by a citizen on a matter of public concern. Id. at 165.
   Like the Tenth Circuit in Koch, we are not "establishing a per se rule exempting statements made in the course of official duties from the protection of the First Amendment." 847 F.2d at 1442. There could be a unique set of facts that would afford such protection. We also emphasize that a public employee has every First Amendment right to speak out as a citizen. See Bonds, 207 F.3d at 976. "Although public employees once forfeited First Amendment protection by virtue of their employment with the government, this is no longer so. Speech by government employees, completely divorced from the employment context, is protected under the same standard as speech by those who are not government employees." Id. (citations omitted). But there are still limits in public employment as to what can be fairly characterized as speech "as a citizen" on a matter of public concern. Speech exercised by a public employee in the course of his employment will rarely fit the mold of private speech by a citizen.

III.

   Since Gonzalez's speech in his employment capacity at OPS was not protected by the First Amendment, his sec. 1983 claim fails. The district court appropriately granted the City of Chicago's motion to dismiss. Also, while the

district court properly exercised its discretion in declining to accept supplemental jurisdiction, that decision and our affirmance should not reflect any view on the validity of the state law claim of discharge in retaliation for Gonzalez's investigation reports that he authored during his tenure at OPS. The district court's decision is

AFFIRMED.