Octavio **DELGADO**, Plaintiff,

v.

**Arthur L. JONES and City of Milwaukee, Defendants.**

No. 00–C–0917.

United States District Court, E.D. Wisconsin.

Aug. 11, 2003.

---

William Rettko, Milwaukee, WI, for Plaintiff.

Jan A. Smokowice, Milwaukee, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Octavio Delgado, a City of Milwaukee police officer, brings this action under 42 U.S.C. § 1983 against defendants Arthur Jones, the City's police chief, and the City.[1] Plaintiff alleges that defendants

---

1. I previously dismissed plaintiff's claims against Monica Ray, the deputy police chief,

violated his First Amendment right to freedom of speech by transferring him to a less desirable position in the police department and reducing his vacation days in retaliation for statements he made. Defendants now move for summary judgment on the grounds that plaintiff's rights under the First Amendment were not violated and that Jones is entitled to qualified immunity.[2]

## I. SUMMARY OF FACTS

Plaintiff has served as a Milwaukee police officer since 1986, and in 1994 was promoted to the position of detective. In 1998, he began working for the Department's Vice Control Division ("VCD"), and was assigned as an undercover narcotics investigator. Since becoming an officer, plaintiff's job evaluations have been satisfactory.

On March 22, 2000, a citizen complained to the Mayor's office about the existence of an alleged drug house located on West Wright Street in Milwaukee. The Mayor's office forwarded the complaint to VCD with instructions to investigate. In late April, as part of a drug entry team, plaintiff searched the house pursuant to a warrant. The search resulted in the arrest of several individuals including a woman named Margaret Mullins. In May 2000, Mullins sent a letter to plaintiff stating that she had information about unlawful drug-related activity, including information about public school employees engaging in drug trafficking, a state employee living with a drug dealer, and the patronage of a drug house by a close relative of a public official. The letter also stated that the public official whose close relative frequented the drug house was a close personal friend of Jones.

Plaintiff recognized that the allegations were sensitive because of the references to a public official and to Jones, but he believed that they should be investigated. He did not want to personally investigate the matter and thought that the investigation could be best accomplished by an outside law enforcement agency.

Plaintiff discussed the letter with his partner, Detective Joseph Link. Link warned plaintiff that any detective who investigated the charges in the letter might be transferred. He based this remark on the fact that other VCD detectives had been transferred for conducting an investigation that led to the arrest of the brother of the deputy police chief. Nevertheless, plaintiff and Link decided that plaintiff should bring the letter to the attention of their immediate superior, although they believed that doing so would result in the matter going up the chain of command, which gave them some concern.

Plaintiff showed the letter to Lieutenant Robert Stelter who read it and said something to the effect of what district did plaintiff want to be transferred to. Stelter testified that he made this comment mostly as a joke, but that the comment referred to the widespread belief in the Department that officers involved in investigations relating to Jones or to his command staff were transferred. Stelter's comment reinforced plaintiff's reluctance to investigate the matter himself, and he told Stelter that he thought that the matter should be referred to an outside agency. In response to Stelter's request, plaintiff gave Stelter a copy of the letter so that Stelter could forward it to Captain Kenneth Meuler. Meuler instructed Stelter to direct plaintiff to interview the informant and write a

and have amended the caption to reflect this change.

**2.** I previously denied defendants' motion to dismiss based on qualified immunity. The decision was affirmed by the Seventh Circuit. *Delgado v. Jones,* 282 F.3d 511 (7th Cir.2002).

report on the interview, which Stelter did. Plaintiff complied with this directive.

Plaintiff interviewed Mullins who identified the public official whose spouse allegedly frequented the drug house as a City of Milwaukee alderman and the spouse as a man named John Odom. The informant also stated that Odom had said that he was a good friend of Jones. Plaintiff then wrote a "matter of" memorandum about the interview and gave it to Stelter, who then reviewed it with Meuler. On May 18, 2000, Meuler transmitted plaintiff's memorandum and other information about the matter to Deputy Chief Ray along with Meuler's recommendation that the matter be referred to an outside agency. Ray reviewed the information and expressed disagreement with the recommendation to refer the matter outside and said that the Chief was not going to be happy. Ray then gave the material to Jones.

Shortly after receiving the material, Jones summoned Meuler into his office and discussed the matter with him. Jones told Meuler that he was not authorized to refer an investigation to an outside agency, and that he should have given the information to Jones sooner. Jones also said that his authority was being undermined, and that the case was similar to the one where officers were transferred after investigating drug activity by Ray's brother. Jones also asked "who the hell was Detective Delgado to think he would investigate this?" (Pl.'s Findings of Fact ("PFOF") ¶ 105.) Finally, Jones said that Meuler should not talk further to plaintiff about the matter, and that plaintiff would be transferred. On May 19, Jones signed the order transferring plaintiff retroactive to the previous day. In addition to being transferred, plaintiff lost vacation days.

The parties disagree about who in the Department was authorized to refer an investigation to an outside agency. Jones testified that he believed that he was the only person with such authority but did not identify any regulation addressing the issue. Meuler testified that he was unaware of any Department policy on the subject but believed that he was authorized to make such a recommendation. He further testified that plaintiff would not normally be authorized to make such a referral but could do so if following the chain of command would compromise an investigation. Ray testified that any officer could make such a referral.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), courts should act with caution in granting summary judgment, *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law,

summary judgment must be denied. *Id.* at 248, 106 S.Ct. 2505.

The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Once this burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. Neither party may rest on mere allegations or denials in the pleadings, *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). Both parties must produce documentary evidence to support their contentions. *Whetstine v. Gates Rubber Co.,* 895 F.2d 388, 392 (7th Cir.1990).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991).

## III. DISCUSSION

### A. First Amendment Retaliation Claim

There are four elements to a First Amendment retaliation claim in the employment context. *Gustafson v. Jones,* 290 F.3d 895, 906 (7th Cir.2002). First, plaintiff must establish that his speech related to a matter of public concern. *Id.; see also Connick v. Myers,* 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Assuming he makes this showing, plaintiff must then prove that his speech played a substantial part in the employer's decision to take an adverse employment action against him. *Gustafson,* 290 F.3d at 906.

If plaintiff carries his burden on these elements, defendants can prevail only if they can prove that the government's interest in providing services efficiently outweighed plaintiff's interest as a citizen in commenting upon matters of public concern, *id.; see also Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); or that they would have taken the adverse action against plaintiff even in the absence of his comments. *Gustafson,* 290 F.3d at 906.

### 1. Matter of Public Concern

■ Whether plaintiff's speech addressed a matter of public concern is a question of law for the court, although it may require predicate factual determinations to be made by the jury. *Id.* A government employee's speech relates to a matter of public concern if it "can fairly be said to relate to a matter of political, social or other concern to the community, rather than merely a personal grievance of interest only to the employee." *Id.* at 907. Whether speech addresses a matter of public concern depends upon its content, form and context as revealed by the whole record. *Id.* at 906–07 (citing *Connick,* 461 U.S. at 147–48, 103 S.Ct. 1684.)

Before analyzing whether plaintiff's speech addressed a matter of public concern, it is important to identify what speech should be considered. Plaintiff contends that the speech in question includes plaintiff's statements about the matter to his superior, Stelter, and his "matter of" memorandum. Although defendants do not address the issue in their summary judgment brief, they state in their reply brief that the only speech that could have caused plaintiff's transfer was the memorandum. However, based on his conversation with Stelter, Meuler was aware of plaintiff's oral statements, and Meuler talked to Jones before Jones announced

that plaintiff was being transferred. Thus, although there may be a factual issue as to what information was actually conveyed to Jones, taking the facts in the light most favorable to plaintiff, I must assume, at this stage of the proceedings, that Jones was aware of plaintiff's statements to Stelter about the matter.

Of the three factors relevant to the matter of public concern analysis—content, form and context—content is the most important. *Id.* at 907. Defendants do not dispute that the content of plaintiff's speech related to a matter of public concern. This concession makes their argument that plaintiff's speech did not address a matter of public concern an uphill battle. "Having conceded content," defendants, like the defendants in *Gustafson* (one of whom was Jones), "face a difficult task" in demonstrating that the speech as a whole was unrelated to a matter of public concern. *Id.* at 908.

The content of plaintiff's speech clearly addressed a matter of public concern. When the Seventh Circuit considered this issue, it stated that "a communication by a law enforcement officer that contains information essential to a complete and objective investigation of serious criminal activity is 'content' that implicates public concern." *Delgado,* 282 F.3d at 517–18; *see also Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir.1990) (stating that issues of police performance and public safety are matters of public concern). The evidence developed since then reinforces the Seventh Circuit's assessment that the content of plaintiff's speech addressed a matter of public concern. Plaintiff's statements to Stelter and his "matter of" memorandum related information indicating that the spouse of a City alderman frequented a drug house and was telling people that he was a close friend of the police chief. This information was of public concern both because it related to serious criminal activ-

ity and to the Department's handling of allegations mentioning public officials.

Defendants' argument that plaintiff's speech did not address a matter of public concern is primarily based on the form and context factors. Form and context are relevant to the question of whether speech addresses a matter of public concern because consideration of these factors ensures that every employment dispute involving a public agency does not become a constitutional issue. *Barkoo v. Melby,* 901 F.2d 613, 618 (7th Cir.1990). Consideration of form and context often amounts to an inquiry into the speaker's motivation. *See Delgado,* 282 F.3d at 518 ("[T]he *Connick* factors of form and context ... can be clarified by an examination of an employee's motivation."). Thus, I must "'look to the *point* of the speech in question,'" or, put differently, determine whether plaintiff sought to raise issues of public concern or simply to advance his own personal interests. *Id.* (quoting *Linhart v. Glatfelter,* 771 F.2d 1004, 1010 (7th Cir.1985)).

The Seventh Circuit previously analyzed the question of plaintiff's motivation and concluded that his speech was designed to engender "an appropriate investigation ... [about] a matter of public concern," rather than to further "some personal, private interest." *Id.* The evidence adduced since the Seventh Circuit made that statement reinforces the accuracy of the observation. Nothing in the record suggests that plaintiff's statements to Stelter or the "matter of" memorandum were intended to benefit him personally. On the contrary, the evidence indicates that plaintiff feared that any involvement by him in the matter might harm his career prospects in the Department. The evidence also indicates that plaintiff's apprehension was not without foundation as officers who had previously investigated politically sensitive alle-

gations had been involuntarily transferred. *See id.*

Thus, the evidence demonstrates that plaintiff's motivations were, at least in part, those "of a well-meaning citizen." *Id.* at 519. Plaintiff did not ignore Mullins's allegations. Further, notwithstanding his concern that taking action might adversely affect him, plaintiff brought the allegations to the attention of his partner and his superior. Moreover, he recommended that the matter be investigated by an outside agency, thus, further indicating that he was motivated by a disinterested concern that the matter be handled fairly.

█ As part of their "form and context" argument, defendants contend that plaintiff's speech did not address a matter of public concern because it was made in the course of his assigned duties. Although statements made by public employees in the course of their duties may constitute speech on a matter of public concern, *see Bonds v. Milwaukee County,* 207 F.3d 969, 980 (7th Cir.2000), where speech occurs in the course of the "routine discharge of assigned functions [and] where there is no suggestion of public motivation" it will not be afforded protection. *Delgado,* 282 F.3d at 519 (discussing *Gonzalez v. City of Chi.,* 239 F.3d 939 (7th Cir.2001)). However, as discussed, the record in the present case contains considerable evidence of plaintiff's public motivation. And, although there may be unresolved factual issues that bear on the matter, on the present record, I cannot conclude that plaintiff's speech was made in the routine discharge of an assigned function.

First, I address plaintiff's statements to Stelter. Plaintiff did not speak to Stelter about the Mullins letter because he was ordered or assigned to do so. Nor does it appear that he was acting pursuant to any requirement. Rather, the evidence suggests that he discussed the matter because he was troubled by the information in the letter and conscientiously believed that it should not be disregarded.

Defendants argue that plaintiff had no discretion as to how to deal with the information because of a department rule providing that officers should not withhold tips. (Smokowicz Supp. Aff. Attach. C, Rule 2/110.00). However, there is evidence in the record indicating that detectives assigned to VCD could initiate their own investigations without the need for directives from superiors. (PFOF ¶ 21.) Moreover, police exercise considerable discretion in determining when and how to follow up on reports of criminal activity. Wayne R. LaFave, *The Police and Nonenforcement of the Law—Part I,* 1962 Wis. L.Rev. 104, 127.

In fact, although there is conflicting testimony on the question, there is considerable evidence that plaintiff could actually have referred the matter to an outside agency. Meuler testified that plaintiff was authorized to refer information to outside agencies to avoid jeopardizing an investigation. And Ray testified that anybody in the Department could call an outside agency to pass on information about a crime. (PFOF ¶¶ 89, 90.) Defendants argue that a department rule relating to "mutual aid" (Smokowicz Supp. Aff. Attach. C, Rule 3/830.00), required that requests for assistance from other jurisdictions be made by the police chief. However, the rule clearly would not apply in the case of a referral made for the purpose of bypassing high level personnel including the chief.

Thus, based on the present record, I cannot conclude that in talking to Stelter about how to handle the Mullins letter, plaintiff was routinely discharging an assigned function. While there may be predicate issues of fact that are, at present, not entirely resolved, I conclude that the form and context of plaintiff's speech

to Stelter suggest that plaintiff was addressing a matter of public concern.

Similarly, although there also may be unresolved factual issues with respect to the circumstances of plaintiff's preparation of the "matter of" memorandum, based on the present record, I cannot conclude that the drafting and transmittal of the memorandum constituted the routine discharge of an assigned function. Although plaintiff was directed to write the memorandum, there was nothing routine about its subject or the document itself. It was hardly routine for plaintiff to write a memorandum about the spouse of an alderman who was alleged to be frequenting a drug house and bragging that the police chief was his friend. Moreover, it is reasonable to infer that it was not routine for plaintiff to be asked to write a memorandum that would immediately be sent to the police chief.

There are additional reasons why the fact that plaintiff was directed to write the memorandum did not make it any less speech on a matter of public concern. First, by complying with a directive to prepare a memorandum, plaintiff did not abandon his status as a well-meaning citizen, the characteristics of which he had previously demonstrated. The Seventh Circuit made this point when it indicated that "[t]he fact that a police officer's job responsibilities may in some measure overlap with motivations of a well-meaning citizen does not change this analysis." *Delgado*, 282 F.3d at 519. Secondly, plaintiff would not have been asked to write a memorandum had he not first come forward on his own with the information in question. If a public employee initially speaks as a citizen on a matter of public concern, his speech does not lose its protected status because his employer directs him to put it in writing. *See e.g., Branton v. City of Dallas,* 272 F.3d 730, 740 (5th Cir.2001) (finding "context" factor to weigh in plaintiff's favor *because,* as a police offi-

cer, plaintiff had a duty to report false testimony by another officer).

For the foregoing reasons, I cannot conclude as a matter of law that plaintiff's speech did not address a matter of public concern. The content factor, which is the most important, weighs heavily in favor of plaintiff. While some predicate factual issues pertaining to the context and form factors may remain in dispute, those factors seem also to weigh in plaintiff's favor. Therefore, I must deny defendants' motion for summary judgment on this basis.

### 2. Motive

■ Assuming that plaintiff's speech addressed a matter of public concern, he must next prove that the speech played a substantial part in the employer's decision to take an adverse employment action against him. *Gustafson,* 290 F.3d at 906. The record makes clear that there are disputed issues of fact concerning defendants' motives for transferring plaintiff. Defendants contend that plaintiff was transferred because he told Mullins that the search of the drug house had been precipitated by a complaint to the Mayor's office and thereby divulged confidential information. However, defendants confine their arguments on summary judgment to whether plaintiff's speech addressed a matter of public concern. Thus, taking all facts in the light most favorable to plaintiff, a reasonable jury could find that defendants transferred plaintiff in retaliation for protected speech.

### 3. *Pickering* Balancing

■ If plaintiff's speech addressed a matter of public concern and such speech played a part in his transfer, defendants can prevail only if they can prove that the government's interest in providing services efficiently outweighed plaintiff's interest as a citizen in commenting upon the matters

in question or that they would have transferred plaintiff even in the absence of his comments. *Gustafson*, 290 F.3d at 906; *see also Pickering*, 391 U.S. at 568, 88 S.Ct. 1731.

In their summary judgment filings, defendants do not make a *Pickering* argument. However, even if they had, the record suggests that the *Pickering* balancing process would favor plaintiff. In conducting the *Pickering* analysis, courts typically consider seven factors:

> (1) whether the speech would create problems in maintaining discipline or harmony among co-workers; (2) whether the employment relationship is one in which personal loyalty and confidence are necessary; (3) whether the speech impeded the employee's ability to perform her responsibilities; (4) the time, place and manner of the speech; (5) the context within which the underlying dispute arose; (6) whether the matter was one on which debate was vital to informed decision-making; and (7) whether the speaker should be regarded as a member of the general public.

*Gustafson*, 290 F.3d at 909. In the present case, of the above factors which are most applicable, all appear to weigh in plaintiff's favor. There is no evidence that plaintiff's statements to Stelter or his "matter of" memorandum would have created problems of discipline or harmony. Plaintiff conveyed the information in a manner that was professional and deferential and in an appropriate time and place. He did nothing that was disruptive or potentially disruptive. Further, plaintiff's speech did not suggest disloyalty, give superiors cause to lose confidence in him, or impede his ability to perform his job duties.

## B. Qualified Immunity

■ Defendant Jones argues that summary judgment must be granted based on qualified immunity. Under the doctrine of qualified immunity "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The test for determining whether public official defendants are entitled to qualified immunity is an objective one. *See id.; Triad Assocs., Inc. v. Robinson*, 10 F.3d 492, 496 (7th Cir.1993). In *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court explained the methodology to be used in addressing the issue of qualified immunity. The initial inquiry is whether, taking the facts in the light most favorable to the party asserting the injury, the facts alleged show that a constitutional right was violated. *Id.* at 201, 121 S.Ct. 2151. The second step is to ask whether the right was clearly established. *Id.*

Defendants argue that no constitutional right was violated because plaintiff's speech did not address a matter of public concern. As previously stated, the question of whether plaintiff's speech addressed a matter of public concern is one to be decided by the court, although it may require predicate factual determinations by the jury. Further, as I have indicated, it is possible that factual issues, which could affect the legal conclusion that I reach, remain. However, based on the present record, for the reasons I have stated, I cannot conclude that plaintiff's speech did not address a matter of public concern. Thus, taking the facts in the light most favorable to plaintiff, plaintiff can establish that a constitutional right was violated.

Defendants do not dispute that, at the time of plaintiff's transfer, it was clearly

established that a public employer could not retaliate against an employee for exercising his First Amendment rights. *Delgado*, 282 F.3d at 520; *see also Gustafson v. Jones*, 117 F.3d 1015, 1021 (7th Cir.1997) ("It has been well established for many years in this Circuit that a public employer may not retaliate against an employee who exercises his First Amendment speech rights, including in particular retaliation through a transfer to a less desirable position.").

For the above reasons, at this point in the proceeding, Jones's invocation of qualified immunity fails.

## C. Municipal Liability Claim

The City argues that plaintiff's claim against the City must be dismissed because plaintiff's First Amendment claim fails. However, as indicated, based on the present record, I cannot conclude that plaintiff's speech did not address a matter of public concern. Thus, the City's request to be dismissed as a defendant must be denied.

## IV. CONCLUSION

For the above reasons,

IT IS ORDERED that defendants' motion for summary judgment is DENIED.